### ADAM SCHMAELZLE vs. THE LONDON AND LANCASHIRE FIRE INSURANCE COMPANY ET AL.

Third Judicial District, Bridgeport, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL AND PRENTICE, JS.

The plaintiff carried insurance upon a brewery, machinery and stock, in thirty-four companies. Part of the policies were blanket or compound policies, in which the various items of property insured were not specified, and the rest were specific policies, in which the items of property insured and the amount of insurance on each item were designated. Each of the policies contained this clause: "This company shall not be liable under this policy for a greater proportion of any loss on the described property . . . than the amount hereby insured shall bear to the whole insurance." Fire

having injured the brewery, machinery and stock, a contention arose between the two classes of insurers as to the method of apportionment of the loss under the above provision.    *Held :* —

1. That the whole amount insured by a blanket policy attached, and invariably attaches, to each item of property covered by such insurance.

2. That the existence of specific policies compelled the settlement of the loss by items, which must be taken up in some order, in respect to which no universal rule could be safely laid down.  The object in each case is to satisfy the ends of fairness and justice as between. the companies, and would be best attained in the present case by taking the items in order of the greatest loss.

3. That the loss should be adjusted as follows: Divide the entire property into items corresponding to those in the specific policies, for the purpose of taking the items in the order of the greatest loss; in computing the amount of insurance upon the first item, apply the full amount of the blanket insurance; in computing the subsequent items, follow the same procedure, save that the total amount of insurance be reduced by the amount of blanket insurance already exhausted, and the amount of insurance under any given blanket policy be reduced by the amount thereof used in prior adjustments.

Argued October 29th, 1902—decided January 7th, 1903.

ACTION in the nature of interpleader to determine what part or proportion of a fire insurance loss each of the defendants should equitably pay, brought to the Superior Court in New Haven County and reserved by that court, *Thayer, J.*, upon an agreed statement of facts, for the consideration and advice of this court.

The case is sufficiently stated in the opinion.

*William B. Stoddard* and *George R. Cooley*, for the plaintiff.

*George A. Fay* and *William L. Bennett*, for the Williamsburgh Fire Ins. Co. et al.

*James H. Webb*, for the London & Lancashire Fire Ins. Co. et al.

PRENTICE, J.   The plaintiff is the owner of premises upon which stood a brewery and shed.  In the brewery were ma-

chinery and stock.   Upon the buildings, machinery, and stock, the plaintiff carried, in some thirty-four companies, insurance against fire aggregating $60,000 in amount.   These policies were all of the standard form and contained the following provision: " This company shall not be liable under this policy for a greater proportion of any loss on the described property . . . than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property. . . ."   Thirty-one of the policies covering insurance for $55,000 were of the kind known as blanket or compound policies; that is, they insured said buildings, machinery and stock, as a whole and without distributing the amount of the insurance among the several items.   The remaining policies, containing insurance for $5,000, were of the kind known as specific; that is, the amounts insured thereby were distributed among the several items of property, a specified amount to each item. Each of these specific policies covered, in the whole, precisely the same property as did the compound insurance, but distributively.   The manner of distribution was uniform among the specific policies, and was among four separate items, to wit, the main or brewery building, stock, machinery, and shed, as follows: $1,634.88 on the brewery, $1,839.21 on the stock, $1,498.64 on the machinery, and $27.24 on the shed.

A fire damaged the brewery, stock, and machinery.   The sound value of the property insured was $59,982, divided as follows: brewery, $20,586; stock, $11,085; machinery, $28,111, and shed, $200.   The loss by the fire was mutually adjusted at $42,953, distributed as follows: brewery, $15,115; stock, $11,085; machinery, $16,753; and shed, nothing.

It is conceded that the assured is entitled to receive from the defendants the amount of his loss above stated.   The only question in the case is one between the several defendants, as to the sums which each should pay.   Between the blanket insurers there is no dispute, and between the specific there is none.   The contention is between the two classes of insurers, and is as to the method to be employed in the apportionment of the loss, in view of the provision as to prorat-

ing which appears alike in all the policies, and which has been quoted.

It is clear that the compound and the specific insurance must be brought together in the prorating. This necessarily involves an adjustment by separate items, and the application in some way of the blanket insurance to each item covered by specific insurance. The question is as to how this shall be done.

The claim of the blanket insurers is that their policies should, for the purpose of the distribution of the loss, be converted into specific ones; specific amounts under the policies being set out to each item upon which there is specific insurance, so that, for the purpose of determining the amount that any blanket policy shall contribute towards any item of loss upon which there is specific insurance, the amount of the blanket policy's insurance upon such item, and the total amount of insurance thereon, shall be computed upon the basis thus ascertained. The methods suggested for making this conversion from compound to specific are two, both of which are claimed as having the approval of authority and experience. One method is to distribute the amount of the blanket policy over the property insured by it, so that the items bearing specific insurance shall be credited with insurance to such a proportionate amount of the whole as the sound value of the specific item bears to the sound value of the whole. The other is to make this conversion upon the basis of the respective losses upon the property insured.

The specific insurers, upon the other hand, contend that there should be no such conversion; but that in adjusting each item of loss the total amount of insurance thereon, and the amount insured by each blanket policy, be determined by including the entire amount of the compound insurance which has not been previously exhausted in adjusting some other item. The widely differing results to which the two claims might lead are apparent.

In making these claims, and others which are incidental to them, all the parties concede that whatever general rule of apportionment of loss may be adopted it must, in so far as

it is not directly prescribed by the contract, yield in case of need to the interests of the assured. The first requisite of any method of apportionment sought to be applied must be the assured's protection to the full extent of his rights under his policies. Any method which, in a given case, fails to afford him the full measure of his just indemnity must give place to another which will.

In the present case the plaintiff has no concern as to which of the suggested modes be adopted in distributing his loss among his insurers. The interests of the latter are alone involved.

The whole question arises out of the application to the facts of the case of the provisions of the prorating clause in the policies. Each insurer has not entered into an unqualified obligation to indemnify the assured to the extent of his loss, or to the extent of his loss limited by the amount of the policy. It has made a contract which gives it, as against the assured, a benefit arising from co-insurance. It stipulates that its liability shall be limited in amount, dependent upon the existence and amount of such co-insurance. The policy expressly states how its liability shall be determined. The question, therefore, becomes one of contract construction. It is not one of equitable determination in the absence of an agreement, as was the case in certain of the adjudicated cases. We are not called upon to adjust the equities between co-insurers, one having paid more than his fair share of the loss. We are not dealing with the doctrine of subrogation. The parties have recorded their agreement, and we have only to determine its meaning and enforce it.

The policy provision, to restate its pertinent portion, is : "This company shall not be liable under this policy for a greater proportion of any loss on the described property . . . than the amount hereby insured shall bear to the whole insurance." It is thus provided that the mode to be employed in determining the extent of liability is purely a mathematical one, involving the stating of a problem in simple proportion. The three known terms of the proportion from which the fourth, to wit, the amount of the liability

under the given policy, is to be deduced, are stated to be the whole insurance, the amount insured under the policy, and the loss. The loss is in this case an ascertained sum: in any, it is a determinable one. Where the given policy is a specific one, the second term is also a definite one, and only the first remains open to question. If the given policy is a blanket one, then both the first and second terms are subject to dispute. An answer to a single question, however, resolves all. That question, which thus stands out as the controlling one in the situation, is thus seen to be this: By the terms of a blanket policy what amount of insurance at-taches to each item embraced within the insurance?

The answer to this question is not a hidden one. The characteristic features of a blanket policy are well under-stood. Its very essence is that it covers to its full amount every item of property described in it. If the loss upon one portion or item of the property exhausts the full amount of the policy, the whole insurance must be paid; there can be no apportionment of it. In the absence of a prorating clause, one blanket insurer among many insurers, whether blanket or specific, may be sued, and he must pay the whole loss if it is not in excess of his policy. His payment will give him certain equitable rights of contribution as against his co-insurers, but his legal obligation to pay the assured cannot be questioned. The contract holds him to that. These principles are elementary. 3 Joyce on Insurance, § 2492; 1 May on Insurance (3d Ed.), § 13; Ostrander on Fire Insurance, § 204.

It is in such particulars as these that blanket policies differ from specific. The difference is one which inheres in the nature of the two contracts, and has its recognition in the accepted advantages of a blanket policy to the assured and its disadvantages to the insurer, and in the more exact-ing terms which are customarily demanded for its issue. The answer to our question must therefore be, that the whole amount insured by a blanket policy attaches, and invariably attaches, to each item thereunder.

The blanket insurers concede the peculiar character which

in general inheres in such policies, but they say that for the purpose of the contributing clause they are entitled to an apportionment of their insurance in cases of adjustment in connection with specific insurers. We fail to see anything in this claim but an appeal from the contract to assumed principles of fairness and equity. It certainly does not rest upon any logical foundation. The palpable answer to it is found in the fact that the question is one of legal construction of an express contract obligation, and not of equitable determination. The parties having made a contract, the courts are powerless to change it. What the blanket insurers ask, is, in effect, that there be read into their policies a provision which is not there. Had the parties wished, this provision might easily have been incorporated. It was not, and the contract must stand as made.

We have thus far discussed the question at issue as one of reason and not of authority. The analogous cases are few. They are, however, to be found. Concerning them, it has to be confessed that the majority which have arisen under the operation of the prorating clause have adopted the compound insurer's view. It is noticeable, also, that of these, all save a very few state the proposition as a dictum, or assume its correctness without argument or reason therefor. Such are the cases of *Blake* v. *Exchange Mut. Ins. Co.*, 12 Gray, 265, 272; *Cromie* v. *Kentucky & L. Mut. Ins. Co.*, 15 B. Mon. 432; *Lesure Lumber Co.* v. *Mutual Fire Ins. Co.*, 101 Iowa, 514.

In *Chandler* v. *Insurance Co. of North Amer.*, 70 Vt. 562, 564, the court attempted to give a reason for this position. It is contained in these words only: "As by the terms of the specific policies they cannot be converted into blanket policies, it necessarily follows that the only way in which the loss can be adjusted is to turn the blanket policies into specific ones." This is a clear case of a *non sequitur*. The argument rests upon an assumed necessity which does not exist. It is practically as simple to adjust a loss by not apportioning as by apportioning the blanket insurance.

In *Ogden* v. *East River Ins. Co.*, 50 N. Y. 388, the court

Schmaelzle v. London & L. Fire Ins. Co. et al.

finds its reason in the fact that it was unreasonable to assume that any of the parcels included in the blanket insurance was overinsured, where the total insurance was not in excess of the total value. What method of adjustment this argument would have led the court to adopt had concurrent compound policies for different gross sums, all or part exceeding specific item valuations, been involved, was not stated. An assumption of such a situation sufficiently discloses the fallacy of the case.

Of all these cases, it is to be observed that none attempts to lay down a rule of universal or even general application. They treat each case by itself, conceding that in the next the rule might not apply. The trouble has been that, in ignoring the contract, all has been left to arbitrary and uncertain action which fairness and equity in the given case seemed to dictate.

In *Page* v. *Sun Ins. Office*, 74 Fed. Rep. 203, the other side of this question is distinctly avowed. The decision is put squarely upon the terms of the contract. The argument, although brief, is substantially that which has guided us. The position assumed in the case last cited seems to have the approval of Joyce in his latest work. 4 Joyce on Insurance, § 3457. In *Sherman* v. *Madison Mut. Ins. Co.*, 39 Wis. 104, also, this doctrine receives at least implied sanction.

One other point remains to be considered. As the existence of the specific policies compels the adjustment of the loss by items, these items must be taken up in some order. This order might very materially affect the result, both as respects the companies and the insured, since that portion of a blanket policy which is exhausted in the settlement upon the first item no longer remains to be applied to the second item, and so on through the list. This matter of order is one upon which the policies in suit, and policies ordinarily, are silent. Evidently nothing remains but some arbitrary method of selection, in which the considerations influencing a choice should be what, on the whole, under the conditions, best satisfies the ends of fairness and justice as between the companies, the assured being given his rightful amount of indemnity. A little

Schmaelzle *v.* London & L. Fire Ins. Co. et al.

study of the peculiar situations which may arise may convince one that no rule of universal and unvarying application can be safely laid down. Whether one suggests the order of the greatest losses, or of the least losses, or the order of the enumeration in the special insurance, or an order to be determined by lot, two at least of which methods appear to have been used, or some other order, he will quite likely be met with an assumed situation in which his system seems to fail to fully accomplish equity and justice. Fortunately we have no need to search for a universal rule. In the present case it matters not to the assured, and little to the insurers, what order of adjustment is adopted. The order first indicated, to wit, that of the greatest losses, is one which as a general rule has some considerations in its favor. In this case it works out substantial equity and justice to all concerned. We therefore select it for the purposes of this case as on the whole the best.

The Superior Court is advised that in the adjustment of the plaintiff's loss and its apportionment among the defendant companies, the items upon which there was loss be taken up in the order of the greatest losses ; the whole property being divided for this purpose into items corresponding to those designated in the specific insurance ; that in computing the total amount of insurance upon the first item, the full amount of the blanket insurance be applied, and that the full amount of any given blanket policy be regarded as the amount of insurance upon the item under such policy ; that with respect to the second and subsequent items the same rule be adopted, save that the total amount of insurance thereon be reduced by the amount of blanket insurance already exhausted in the settlement upon former items, and the amount of insurance under any given blanket policy likewise reduced by the amount thereof used in prior adjustments, and that judgment be rendered against the several defendants according to the results thus obtained.

In this opinion the other judges concurred.