HERMAN PINSKY, Plaintiff, *v.* MINNEAPOLIS FIRE AND MARINE INSURANCE COMPANY, Defendant.

First Department, March 1, 1929.

*Abraham H. Sarasohn,* for the plaintiff.

*D. I. Rosenblum* of counsel [*S. J. Rosenblum,* attorney] for the defendant.

MERRELL, J.  This controversy arises through a fire loss sustained by plaintiff's assignor, Solomon Raisin, and involves the *pro rata*

liability of the defendant under the terms of a policy of fire insurance issued by defendant upon a stock of merchandise and fixtures owned by the insured. It is stipulated in the agreed statement of facts that Solomon Raisin, plaintiff's assignor, owned a stock of merchandise and fixtures located at 862A Tremont avenue, borough of The Bronx, New York city, and that on the 1st day of May, 1923, the defendant, a foreign corporation incorporated under the laws of the State of Minnesota and duly licensed to transact the business of fire insurance in the State of New York, and having an office for the transaction of its business in the city and county of New York, insured said Raisin against loss by fire, as follows: $2,000 on stock of merchandise, not hazardous, and extra hazardous, including materials, supplies of every description, boxes, full and empty packages, samples, labels and advertising matter; and $1,000 on furniture, fixtures, apparatus and machines of every description, including counters, cabinets, labels, show cases, shelving and partitions, mirrors, pictures, paintings, engravings and their frames at not exceeding cost; safes, figures, stands, and racks, trucks, scales, and tools, electric motors, wiring and apparatus, typewriting and counting machines, graphophones, phonographs, and all fixtures, and attachments and records, presses, index books, indices, records, reports, ratings, drawings, designs and labor thereon, curiosities, papers, pamphlets, manuscripts, maps and models, shades, carpets, and other floor covering, wearing apparel and personal effects, trunks, stationery, law books and other books, paper, twine and other supplies; show cards and stock boxes, flags, awnings and signs, prismatic glasses and their frames, for the period of one year, commencing on the 1st day of May, 1923, and ending on the 1st day of May, 1924, and that the defendant promised and agreed to pay the plaintiff's assignor all direct loss and damage by fire to the said property within sixty days after the plaintiff's assignor should furnish due notice and satisfactory proof of loss. The policy of insurance was in the form known as the standard fire insurance policy of the State of New York, and contained, among others, the following provision: " Pro Rata Liability. This company shall not be liable for a greater proportion of any loss or damage, than the amount hereby insured shall bear to the whole insurance covering the property, whether valid or not, and whether collectible or not."

It was further stipulated that at the time of the occurrence of the fire referred to therein there was other insurance covering the said property in the sum of $5,500, $3,000 of which insurance was under a policy of insurance issued by the Commercial Union Insurance Company, and $2,500 thereof was insured under a policy of insurance issued by the Insurance Company of North America. These

last two policies were known as "blanket policies," and covered the property of said Solomon Raisin, consisting of stock and merchandise and fixtures located in the premises aforesaid, without specifying or dividing the coverage separately as to stock and as to fixtures. On or about October 4, 1923, while the said policies of insurance were in full force and effect, a fire occurred at the said premises, 862A Tremont avenue, and the property of plaintiff's assignor located at said place and insured under the policies of insurance above mentioned was damaged by the said fire. Due notice of the occurrence of said fire was given to the insurance companies above mentioned, and thereafter plaintiff's assignor and the defendant agreed that the value of the stock of merchandise of plaintiff's assignor insured under defendant's policy of insurance and located at the place above mentioned was, immediately preceding the fire, the sum of $2,000, and that the damage caused thereto by said fire was $992.92; that the value of the fixtures of the assured in said premises and covered by said policies was $2,700, and that the damage sustained by plaintiff's assignor as the result of said fire to the said fixtures was $700. It was further stipulated that the plaintiff's assignor duly complied with all the terms and conditions of the policy of insurance on his part to be complied with, and that more than sixty days have elapsed since the ascertainment of the amount of loss; that thereafter the said Solomon Raisin assigned the aforesaid claim against the defendant to the plaintiff herein, who has ever since been and still is the owner and holder thereof. The controversy which has arisen and which is submitted to this court upon the agreed statement of facts is the question as to the amount for which the defendant is liable under the provisions of the policy of insurance relating to *pro rata* liability above quoted, and what, if any, is the proportion of the loss and damage that the defendant's policy bears to the whole insurance covering the property.

Rather widely divergent claims are asserted by the plaintiff and by defendant as to the latter's liability under its policy issued to plaintiff's assignor. It is the plaintiff's contention that the defendant is liable to pay to plaintiff, of the total loss sustained of $1,692.92, the sum of $740.74. To arrive at this amount the plaintiff adopts a calculation whereby the policies covering the loss are divided into two classes, the first class consisting of the defendant's policy with a specific amount upon the fixtures and a specific amount upon the stock damaged, and the other class consisting of the blanket policies covering both stock and fixtures without any specific amount upon the fixtures or any specific amount upon the stock. The plaintiff then ascertains the limit of liability of each class of policies. The limits of liability for all the classes of policies are

then added together, and since the aggregate limit of liability necessarily exceeds the amount of the loss, the proportion of liability of each class is ascertained by multiplying the limit of liability of said class by the amount of the loss and dividing the result by the amount of the total limit of liability. Finally, the total liability under the blanket policies is then divided between all the policies in the blanket form in accordance with the amount of each policy. In order to apportion the defendant's liability under such calculation, the plaintiff seeks to ascertain its limit of liability and to do so assumes the existence of an eighty per cent clause in the policy. The agreed statement of facts contains only the *pro rata* liability clause, and no mention is made of any eighty per cent clause in the defendant's policy, and, therefore, it cannot be considered upon this submission. And, further, in no event would such eighty per cent clause apply to this small partial loss where the insurance was many times the value of the property destroyed. Therefore, the plaintiff's calculation, whereby he seeks to arrive at the limit of liability of the defendant under its policy, is upon an erroneous premise, and cannot, under any circumstances, be considered. The plaintiff arrives at the sum of $740.74 as the result of his calculation of the defendant's liability upon the stock and upon the fixtures by adding the " limit of liability " of all classes of insurance and then apportioning the amount of loss between both classes of insurance, each paying such proportion thereof as its " limit of liability " bears to the total of both limits. The plaintiff cites no decision of the courts wherein the method of calculation which he has adopted has been used. Under the plaintiff's method the liability of the blanket insurer is placed upon the same footing as that of the specific insurer. Such apportionment was rejected in the well-considered case of *Grollimund* v. *Germania Fire Ins. Co.*, a case arising in the Court of Errors and Appeals of the State of New Jersey, and reported in 82 New Jersey Law Reports, at page 618. In that case the court adopted the so-called " Connecticut rule," to the effect that the blanket policies should be held to cover to their full amount every item of property described in said policies, because the blanket policy is the greater risk and would have to pay the entire amount of the loss sustained on either item, if there were no other insurance. The rule for which the defendant contends was adopted in the case of *Schmaelzle* v. *London & Lancashire Fire Ins. Co.* (75 Conn. 397). The Connecticut rule has been styled by some textwriters as the " Gradual reduction " rule. It seems to us that the Connecticut rule is the safest and most logical rule to be adopted in the case at bar. In *Schmaelzle* v. *London & Lancashire Fire Ins. Co.* (*supra*) there was insurance to the amount

of $55,000 covered by blanket policies on building, machinery and stock, each policy containing a contribution clause. There was also $5,000 of insurance in three policies covering the same property as the blanket policies, but distributed specifically upon the building, on the stock, on the machinery, and on a shed on the property. The sound value of the whole property was $59,982, $20,586 being for the building; $11,085 for the stock; $28,111 for the machinery, and $200 for the shed. A fire occurred with a total loss of $42,953. The loss on the building was $15,115; on the stock, $11,085, and upon the machinery, $16,753. There was no loss upon the shed. A controversy arose between the insurers as to the proportion which each should pay of such loss. The Connecticut Supreme Court of Errors held that the blanket policy covers to its full amount every item of property described in it; and applying the rule of having the blanket policies contribute to their full amount with the specific, first on the item on which the loss was greatest, to wit, the machinery, and on which the specific insurance amounted to $1,498.64, the blanket and the specific insurers paying their respective proportions toward that item, the court then applied the unexhausted balance of the blanket insurance remaining after payment of the machinery item to contribute with the $1,634.88 specific insurance on the next largest loss, which was the building, and which loss amounted to $15,115, the blanket and specific each paying its proportion, and then the entire unexhausted balance of the blanket insurance left after payment of the losses on machinery and building to contribute with the specific insurance on the stock, $1,839.21, towards the payment of the balance of the loss on the stock. The rule adopted in the *Schmaelzle* case seems to be the same as that adopted in *Grollimund* v. *Germania Fire Ins. Co.* (82 N. J. L. 618), and appears to have been the rule adopted in several other jurisdictions. (*Page* v. *Sun Insurance Office*, 74 Fed. 203; *Sherman* v. *Madison M. I. Co.*, 39 Wis. 104.) In *Page* v. *Sun Insurance Office* (*supra*) the Circuit Court of Appeals held that under similar circumstances under a policy providing that the company shall not be liable for a greater proportion of any loss on the property described therein than that which the amount insured shall bear to the whole insurance covering such property, as follows: "*First.* Compound policies insuring the property described in such a policy, and other property, cover the property so described, to their full amount, in case of a loss upon the property described in the specific policy, and no loss on the other property described in the compound policies. *Second.* In such a case the company issuing the specific policy is liable for no greater proportion of the loss than that which the amount of such policy bears to the total amount of both the compound and specific policies

covering the property it describes." (Citing *Merrick* v. *Germania Fire Insurance Co.*, 54 Penn. St. 277, 281, 282, 284.)

Under the so-called Connecticut rule, for which the defendant contends, apportioning the loss between the blanket and specific insurance, the defendant's proportion of the loss to the stock would be $264.78, and upon the fixtures $121.28, in all $386.06. These amounts are arrived at in the following manner under the Connecticut rule: The total insurance upon the stock was $7,500, of which amount the defendant insured the stock for $2,000, the blanket policy of the Commercial Union for $3,000, and the blanket policy of the Insurance Company of North America for $2,500. Upon this stock there was a conceded loss of $992.92. The defendant's insurance thereon, being $2,000, was for four-fifteenths of the loss on the stock, and amounted to $264.78; the Commercial Union policy for $3,000 covered six-fifteenths of the loss, and it was chargeable with $397.17 of such loss; the Insurance Company of North America insured for $2,500 and represented five-fifteenths of the loss, and its share thereof amounted to $390.97. Upon the payment of such loss of $992.92, the blanket policies of the Commercial Union and of the Insurance Company of North America were reduced by $728.14. This left an unexhausted balance of blanket insurance of $4,771.86, to the extent of which the blanket insurance should contribute with the specific insurance of the defendant of $1,000 on the second item in the defendant's policy covering furniture, fixtures, etc., towards the payment of the loss of $700 on that item. The total insurance, with which the $700 loss on the second item is to be paid, amounts to $5,771.86, and the defendant, therefore, is chargeable with the payment of 1000/5771.86 of said $700, amounting to $121.28. The share the Commercial Union should bear of said loss on fixtures is 2603/5771.86, or $315.68; and the share of the Insurance Company of North America therein would be 2169/5771.86, or $263.04. The Connecticut rule, upon which this above calculation is made, is based upon the theory that a blanket policy is a greater risk than a specific policy, and that, equitably, the greater risk is attended by the larger loss. In issuing a blanket policy covering all the items of property involved, I think it must be held that the underwriter assumes the risk of the full amount of the policy on each and every one of the items covered, and obligates itself to pay on either or all of the items whatever loss may occur until the entire policy is exhausted. As was said in *Grollimund* v. *Germania Fire Ins. Co.* (*supra*): "It is axiomatic that a blanket policy is a greater risk than the specific, and in natural equity the assumption of the greater risk is not inequitably attended by larger loss. * * * In the very nature of the two contracts

[referring to blanket and specific policies] there is great difference in the risk assumed."

We are, therefore, of the opinion that the so-called Connecticut rule should be adopted in apportioning the amounts to be paid by the various companies under said policies, and that the amount which the plaintiff should recover of the defendant upon the two items contained in the defendant's policy is $386.06.

The plaintiff claims interest upon the amount due from defendant. The parties, however, stipulated that the plaintiff should have judgment against the defendant for the amount which the court should decide was the defendant's proportion of the loss sustained. We think, therefore, under such stipulation, we are not authorized to include interest in the amount awarded.

Judgment is, therefore, directed in favor of the plaintiff against the defendant for the sum of $386.06, and as stipulated, without costs.

DOWLING, P. J., McAVOY, MARTIN and PROSKAUER, JJ., concur.

Judgment directed in favor of plaintiff for $386.06, without costs. Settle order on notice.