[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT FEDERAL INSURANCE COMPANY
The plaintiffs have moved for summary judgment on their claim, made in the first count of their complaint of their complaint, that defendant Federal Insurance Company ("Federal") breached its duty to defend them in two lawsuits[1] brought against them by Dr. Ricki-Lahn Chopyk. The plaintiffs in this action, The Milford Hospital, Inc. and its chief executive officer Paul E. Moss, allege that Federal had issued a directors and officers insurance liability policy to them, that the provisions of that policy required them to provide a defense to theChopyk suits, and that Federal failed to do so in that it has taken the position that it should pay only defense costs for the plaintiffs and not those of another party that is not insured by Federal.
The crux of the dispute between the parties is the simultaneous representation by movants' attorney in the Chopyk suits of an additional defendant, an entity known as Connecticut Multi-Specialty Medical Associates, P.C., a practice plan with which Dr. Chopyk contracted concerning provision of medical services, and which Dr. Chopyk sued along with the movants. The lawyers approved by Federal to defend Moss and the hospital also undertook to represent the practice plan. Federal took the position that part of the defense costs should be allocated to the practice plan; but the plaintiffs insist that Federal had a duty to pay 100% of the defense lawyers' bills, without regard to those lawyers' simultaneous provision of services to the practice plan.
Standard of review
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." LaFlamme v. Dallessio, 261 Conn. 247, 250
(2002); QSP, Inc. v. Aetna Casualty Surety Co., 256 Conn. 343, 351
CT Page 13105 (2001); Alvarez v. New Haven Register, Inc., 249 Conn. 709, 714 (1999);Nichols v. Lighthouse Restaurant, Inc., 246 Conn. 156, 163 (1998);Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 481 (1997); Practice Book § 17-49.
The party moving for summary judgment bears the burden of proving the absence of a genuine dispute as to any material fact; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v.Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's Medical Center,252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990); Forte v. Citicorp Mortgage, Inc., 66 Conn. App. 475
(2001). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Undisputed Facts
Dr. Chopyk commenced one lawsuit in 1998 and the other in 1999. She alleged that the practice plan had contracted to buy her medical practice and to enter into an employment agreement with her and that the practice plan fired her in violation of the employment agreement. Dr. Chopyk alleged that the hospital dominated the conduct of the practice plan, had a unity of interest with the practice plan and was liable for its alleged misdeeds along with Paul Moss, who was an officer both of the hospital and of the practice plan.
Though the plaintiffs claim that Federal failed to furnish them with CT Page 13106 counsel to defend them against Dr. Chopyk's suits, their actual position is that Federal failed promptly to pay 100% of the bills and expenses of those lawyers, who were employed by the law firm of Murtha, Cullina, Richter Pinney, LLP ("Murtha Cullina") and that this controversy over the extent of payment constituted a breach of the duty to defend.
The parties do not dispute the following relevant facts.
The practice plan is a for-profit professional corporation that was not listed as a named insured in the directors and officers policy issued by Federal, which identifies the insured organization as "Milford Health Medical, Inc. and its subsidiaries" and the insured persons as "any person who has been, now is or shall become a duly elected or appointed director, a duly elected or appointed officer, employee, volunteer, committee member, or trustee of the insured organization." The practice plan was not added as an insured by endorsement, and Federal's coverage excludes coverage for for-profit subsidiaries.
After the first Chopyk suit was sent to it, Federal issued a reservation of rights letter, dated September 24, 1998, in which Attorney Hilary R. Hoffman of its Directors and Officers Claims division explained that while the practice plan was a subsidiary of the insured hospital, the policy excluded coverage of any for-profit organizations and that the practice plan, as a for-profit entity, was therefore not an insured organization under the policy. Attorney Hoffman stated that it would be necessary to agree on the allocation of defense costs between insured and uninsured parties represented by Murtha Cullina.
The insurance policy at issue contains the following provision:
 9. . . . If both Loss covered by this coverage section and loss not covered by this coverage section are incurred, either because a Claim against the Insured
includes both covered and uncovered matters or because a Claim is made against both an Insured and others, the Insured and the Company shall use their best efforts to agree upon a fair and proper allocation of such amount between covered Loss and uncovered loss.
(Emphasis in original.)
The policy defines "Defense Costs" as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses . . . incurred in defending or investigating Claims." (Emphasis in original.) CT Page 13107
Attorney Hoffman noted in the September 24, 1998 letter that Moss would be covered both as an officer of the hospital and as a director of the subsidiary practice plan. Federal invoked other coverage limitations in its reservations of rights letter, and it amended that letter by a letter dated December 17, 1999, in which Attorney Deanna Beacham reiterated that "because there are uncovered matters and parties in these actions, it will be necessary to determine an allocation of Defense Costs and any settlement or judgment."
In April 1999, Federal proposed that the parties agree to an allocation of defense costs by which Federal would pay 60%, allocating 40% of Murtha Cullina's bill to the practice plan, which the law firm was also representing. The plaintiffs objected to this allocation, which Federal proposed again in its December 17, 1999 letter.
Murtha Cullina entered appearances for all defendants in the Chopyk suits, including the practice plan, for which no other attorney filed an appearance.
The policy provided for a $75,000 deductible, and Attorney Beacham began in December 1999 to contact Moss to discuss allocation of defense costs incurred after the deductible might reasonably have been expended. The plaintiffs stated that they would get back to Federal with a response, but did not do so for a month. Moss temporized when asked to discuss allocation in January 2000 and April 2000, saying he had not yet made a decision regarding allocation. Between April 2000 and March 2001, Beacham called Moss on six occasions and left messages asking him to call her back to discuss allocation.
Federal sent a check for defense costs on March 27, 2001, in the amount of $65,008.39.
By letter dated May 16, 2001, the plaintiffs objected to a memorandum on the check indicating that it was "in settlement of all services rendered." When the plaintiffs objected to this notation, Federal furnished them with a letter dated June 18, 2001, stating it would not invoke any preclusive effect of that notation and offering to replace checks that contained that notation with checks that did not.
During 2001, the three defendants in the Chopyk suits were engaged in negotiating a resolution of Dr. Chopyk's claims. On May 16, 2001, Attorney Francis. J. Brady of Murtha Cullina wrote to Beacham demanding that Federal pay 100% of that firm's bills for defending all three parties in the Chopyk suits. In June 2001, legal counsel for Federal CT Page 13108 responded that since it had no obligation to provide the practice plan with a defense, 60% was the appropriate share of defense costs for Federal to pay.
In July 2001, Attorney Brady and Attorney Cathy Simon of the law firm representing Federal against discussed the appropriate share of defense costs. The parties were unable to come to any agreement, and the plaintiffs commenced this suit on September 25, 2001.
In an agreement dated February 25, 2002, the parties agreed that Federal would fund the amount that the hospital, Moss, and the practice plan agreed to pay to settle the Chopyk suits, but that Federal would reserve its right to contest its duty to pay more than a specified amount of the settlement. The plaintiffs now take the position that the delay in resolving the issue of payment for defense costs constitutes a breach of the duty to defend and that the remedy for the breach should be to require Federal to pay the entire amount of the Chopyk settlement.
Murtha Cullina has billed approximately $475,000 for services performed in the Chopyk suits. To date, Federal has paid Murtha Cullina approximately $198,000.
The parties do not agree about the extent to which Murtha Cullina's bills reflect efforts that constituted a defense of the uninsured practice plan and not a defense of the insured hospital or Moss.
Do the undisputed facts establish a breach of the duty to defend?
The plaintiffs assert that Federal's refusal to pay 100% of the defense costs incurred constitutes a breach of the duty to defend them. They have equated Federal's conduct with a total refusal to furnish a defense, invoking the seminal case of Missionaries of the Company of Mary, Inc.v. The Aetna Casualty and Surety Co., 155 Conn. 104 (1967), in which the Supreme Court decided no more than that an insurer presented with a suit that on its face applied to the plaintiffs claim against the insured had a duty to defend but had the option to do so under a reservation if it had reason to believe that the claim was not in fact covered. That case includes no consideration of instances in which an insured seeks to require the insurer to bear the costs of defending an additional party who is not an insured. The movants unconvincingly equate a dispute over the amount of fees to be paid to defense counsel by the insurer with failure to provide a defense.
The dispute between the parties is, fundamentally, a dispute about allocation of defense costs. Federal has never taken the position that it CT Page 13109 would not defend its insureds; rather, its position is that it will not pay for the defense of a party that it did not insure, and the parties are in conflict concerning the amount of Murtha Cullina's bills that are properly ascribable to costs of defending the insureds.
All of the cases in which Connecticut's Supreme Court has considered allocation concern coverage, not costs of defense. The movants have furnished the court with many citations to cases in which an insurer either refused to furnish a defense or brought a declaratory judgment action seeking adjudication of its duty to defend. None of these cases equates, as the plaintiffs urge, a dispute concerning the amount of fees to be paid with a breach of the duty to defend.
The general approach of the Connecticut Supreme Court in construing an insurer's obligations under an insurance contract has been to examine the text of the insurance policy to determine the reasonable expectations of the parties.
The Court has ruled that "[i]n construing an insurance contract we must look to the reasonable expectations of the parties as disclosed by the provisions of the policy." O'Brien v. United States Fidelity Guaranty Co., 235 Conn. 837, 848 n. 9; see Buell Indus., Inc. v. GreaterNew York Mut. Ins. Co., 259 Conn. 527, 538-39 (2002); Kelly v.Figueiredo, 223 Conn. 31, 36 (2002). With regard to a claim that coverages for multiple automobiles could be aggregated or stacked to provide coverage that was a multiple of the coverage for each insured vehicle, the Supreme Court likewise held that the extent of the coverage "depends upon the reasonable expectations of the parties to the contract, a determination to be gleaned from the facts and circumstances of each case," including evidence concerning expectations, the text of the insurance policy and the payment of a single premium. Kent v.Middlesex Mutual Assurance Co., 226 Conn. 427, 432-33 (1993).
The Court has stated that insurance policies should be interpreted in a manner that gives "operative effect" to "[e]ach sentence, clause and word . . . if that can be done by any reasonable construction." Buell Indus.,Inc. v. Greater New York Mut. Ins. Co., supra, 259 Conn. 539; Hansen v.Ohio Casualty Ins. Co., 239 Conn. 537, 548 (1996); Kelly v. Figueiredo, supra, 223 Conn. 36.
The Court has recognized that insurance policies may limit the benefits provided and that they may contain provisions limiting the benefits provided or allocating risks to other insurance or providing for apportionment of costs between the insurer and others so long as the terms of such proration or allocation are clear in the policy. In SchmaelzleCT Page 13110v. London Lancashire Fire Insurance Co., 75 Conn. 397, 402 (1903), the Court indicated that allocation of coverage may be appropriate when a policy contains an allocation provision, but merely observed that the right to allocate should be clearly identified in the terms of the policy: "[i]n the absence of a prorating clause," the insurer was not entitled to a pro rata apportionment of loss. In O'Brien v. United StatesFidelity Guarantee Co., supra, 235 Conn. 849, the Court stated that "it would not be against public policy to enforce an insurance contract that included a pro rata `other insurance' clause if the provision were clear and unambiguous."
In its provisions defining "insured persons" and "insured organizations," the insurance policy at issue in this suit clearly identifies the parties that are entitled to the benefits of the policy and clearly excludes for-profit subsidiaries. Since the definitions in the policy unambiguously exclude for-profit subsidiaries, they cannot have created an expectation that the insurer would furnish a defense to the practice plan. The plaintiffs have not submitted any affidavit stating an expectation that the for-profit practice plan was insured under the policy issued by the defendant. The affidavits of the hospital's chief executive officer, plaintiff Paul Moss, state no such expectation.
The provision set forth above provides that the insured and Federal "shall use their best efforts to agree upon a fair and proper allocation" of defense costs when a claim is made against both an insured and an uninsured party. The plaintiffs assert that this provision requires no more than a discussion of allocation, and that Federal has a duty, in the case of lack of success in reaching agreement in such a discussion, to pay all of the defense costs submitted by the insured, even if those costs are attributable in part to defense of an uninsured party. Such a construction is not supported by the clear provisions in the insurance policy that state that Federal will pay defense costs only for insureds, with the inescapable inference that the allocation to be discussed is the allocation between defense costs for insureds and those for uninsured parties. The plaintiffs assert that by taking the position that the proper allocation is payment of 100%, they may, in effect, defeat the definitions in the policy that unmistakably specify that the insurer will pay the defense costs only of those defined as insureds. Federal asserts that the failure to reach agreement concerning the amount to be paid to its insureds in defense costs requires a determination by the court whether Federal has fulfilled its obligation to pay the costs attributable to the defense of its insureds, as opposed to costs attributable to the simultaneous defense of the uninsured practice plan. CT Page 13111
Alternatively, the movants assert that delay in payment of the bills of defense counsel constitutes a breach of the duty to defend, a proposition not supported by their citations of general holdings on the scope of the duty to defend. While an insurer that agreed to defend but never paid defense costs at all nor participated in an effort to resolve the amount of such costs might very well be found to have breached the duty to defend, this case does not present such circumstances. The policy clearly provides for efforts to resolve allocation disputes, and the delay in pursuing them and the lack of success in resolution appears to have been caused in substantial part by Moss' prolonged lack of response to Federal's attempts to resolve the allocation while the Chopyk suits were still pending. It is not lost on the court that Moss was well-motivated, as an officer of both the hospital and the practice group, to extend Murtha Cullina's efforts to the practice group's defense in those suits for as long as possible without allocation of any of that firm's fees to the practice group.
Have the plaintiffs established that 100% of the bill was for costs ofdefending them?
The plaintiffs assert that none of Murtha Cullina's billings should be allocated to its defense of the practice plan because all of the work reflected in those billings was for the benefit of the plaintiffs. In order to be entitled to summary judgment, the plaintiff must show that the undisputed facts establish to the civil standard of proof that all of the services that resulted in Murtha Cullina's bill for $475,000 were services rendered to the insured for the defense of the claims against them in the Chopyk suits. They have failed to do this. The only proof they have offered in this regard is two general, conclusory sentences in the affidavit of just one of multiple lawyers who defended the Chopyk
suits. Attorney Kennedy Hudner, who describes himself not as the only lawyer but as "the principal defense attorney for the three defendants in the Chopyk Actions, namely The Milford Hospital, Inc. (`Milford Hospital'), Paul E. Moss (`Paul Moss') and Connecticut Multi-Speciality Medical Associates, P.C. (`CMSMA')" states at paragraph six of his affidavit dated May 2, 2002, that "No additional expense was incurred by defending CMSMA above and beyond what was already incurred for the defense of Milford Hospital and Paul Moss. All of the defense effort was reasonable related to the defense of Milford Hospital and Paul Moss." The court notes that Attorney Hudner acknowledges that lawyers beside himself worked on the defense of the Chopyk actions. The other lawyers have not submitted affidavits stating that each and every moment they spent on the matter was for the benefit of the insured defendants rather than for the benefit of the uninsured practice plan, against which some of the counts of the two complaints were solely directed. CT Page 13112
As has been mentioned above in this court's discussion of the standard applicable to summary judgment motions, a party is not entitled to judgment on motion unless he makes "a showing that it is quite clear what the truth is." Witt v. St. Vincent's Medical Center, supra, 252 Conn. 373, n. 7. As noted above, only one of multiple lawyers whose billings have been submitted to Federal has furnished a sworn statement concerning his activities. Attorney Hudner's statements are very likely to rest on hearsay concerning the activities of other lawyers. Such hearsay would be inadmissible at trial and therefore should not be depended upon in granting judgment on motion since a motion for summary judgment must be decided on the basis of admissible evidence. Great County Bank v.Pastore, 241 Conn. 423, 435 (1997); citing Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 203-204 (1995); Practice Book §17-46.
Furthermore, it strains credulity to assert that in the course of defending three entities, not one of multiple lawyers on the defense team devoted a moment to any task that was related solely to the representation of the practice plan. The claims against the hospital and Moss in the Chopyk suits were based on a theory of piercing the corporate veil that separated the hospital and the practice plan. Dr. Chopyk claimed that "upon information and belief, the Hospital has complete control over CMSMA and completely dominates the policies and business practices of CMSMA" and further claimed that the hospital should be held liable for the breach of contract and torts of a separate corporation, the practice plan.
A lawyer representing only the hospital and its chief executive officer could very well have defended Dr. Chopyk's claims by focusing on the separateness of the corporations and the fact that the contract at issue was signed only by the practice plan, leaving to counsel for the practice plan the task of countering the underlying claim of breach of the contract by the practice plan. The court finds Attorney Hudner's conclusory statement, with its apparent characterization of the activities of other lawyers who have not sworn to the nature of their activities that are reflected in the bill, is insufficient basis to support a determination that 100% of the billings for defense costs are costs that Federal is obligated to pay under the terms of a policy that limits defense costs to those incurred by insureds.
The movants have failed to prove their claim that Federal breached its obligation to provide them with a defense because it refuses to pay 100% of costs incurred jointly by insured and uninsured entities, under circumstances in which the facts do not establish that the amounts billed CT Page 13113 by defense counsel include no billing whatever for any work at all that was not in defense of the insured defendants.
Conclusion
For the foregoing reasons, the court denies the plaintiffs' motion for summary judgment on the claim made in the first count of their complaint.
 Beverly J. Hodgson Judge of the Superior Court