18709

The COLUMBIA COLLEGE, Appellant, v. The PENNSYLVANIA
INSURANCE COMPANY, Respondent

(157 S. E. (2d) 416)

238

*Messrs. Edens, Woodward & Butler* and *Roberts, Jennings & Thomas,* all of Columbia, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

*Messrs. Edens, Woodward & Butler* and *Roberts, Jennings & Thomas,* all of Columbia, *for Appellant, in Reply.*

October 9, 1967.

LITTLEJOHN, Justice.

The defendant issued eight separate fire insurance policies on 28 buildings and their contents located on the campus of Columbia College, plaintiff herein, for a total face amount of $3,094,200.00.

In February, 1964, the dormitory-auditorium building, valued at $550,000.00 in the policy, and the administration building, valued at $200,000.00 in the policy, were completely destroyed, along with the contents, by fire.

Each policy provided a different amount of insurance coverage, and each of the buildings had an agreed value in the policies as required by State law (Sec. 37-154).

The defendant has paid $750,000.00 applicable to the two buildings and contends that this amount is the whole sum due under the terms of all the policies. In addition, personal property losses have been paid and are of no concern in this appeal.

The plaintiff-insured brings this action alleging that under the policies defendant is liable, by reason of the new Public and Institutional Property Plan and the replacement endorsement, for replacement costs (new) of the buildings, a total of $1,355,736 (less, however, $750,000.00 already paid), and prays judgment for the difference, to wit, $605,736.00.

The issues involved in this proceeding are the same as relate to each of the policies and the policies are attached to the plaintiff's amended complaint, marked as Exhibit A, and they are likewise incorporated by reference in the plaintiff's second amended complaint. Each of these policies is issued pursuant to a Public and Institutional Property Plan. Such an insurance plan is relatively new and has been in effect in South Carolina only since the year 1960. In that year the South Carolina Insurance Commissioner approved a proposal filed by the South Carolina Inspection and Rating Bureau.

Such an insurance plan is available to institutions such as Columbia College and provides blanket coverage for the insured's properties. The proper definition of "blanket coverage" is in dispute and will be referred to later.

The original complaint was served August 19, 1965. Thereafter on September 3, 1965, plaintiff, as a matter of course, served an amended complaint to which were added copies of the eight fire insurance policies hereafter referred to as Exhibit A.

On September 15, 1965, defendant served a notice of motion to require the plaintiff to make the amended com-

plaint more definite and certain by identifying by numbers, as shown on Valuation Clause, No. 882, of policies, the two buildings alleged to have been burned.

On October 15, 1965, plaintiff served upon defendant a notice of motion for leave to further amend its amended complaint by incorporating the filing with the Insurance Commissioner for approval of the Public and Institutional Property Plan. Such filings are hereinafter referred to as Exhibit B.

On October 21, 1965, the judge heard oral arguments on all outstanding matters. He did not consider the pleadings ripe for consideration of the demurrer, but granted the defendant's motion to require that the amended complaint be made more definite and certain, such order being dated October 27, 1965. No mention is made in the order of plaintiff's motion to add the filings to the complaint.

On November 5, 1965, plaintiff, reserving its rights to later seek a review of the intermediate order of October 27, 1965, served a second amended complaint, indicating the numbers, as shown on Valuation Clause, No. 882, of the burned buildings, reincorporating the policies (Exhibit A), and including as a part of the second amended complaint the filings made by the South Carolina Inspection and Rating Bureau with the Insurance Commissioner (Exhibit B).

Defendant's demurrer, dated September 15, 1965, to the amended complaint was considered as applying to the second amended complaint. The demurrer submitted that the plaintiff's complaint "fails to state facts sufficient to constitute a cause of action upon which the relief demanded in the Complaint can be granted * * *." The essence of the demurrer is a contention by the defendant that it appears on the face of the complaint that the limit of liability under the policies made a part of the complaint for the loss of the two buildings involved is a total of $750,000.00, and it is admitted in the complaint that such amount has been paid.

The basic contention of the plaintiff is that blanket coverage is provided and that under the policies and endorse-

ments the insurance company is liable for total replacement cost of the two buildings destroyed by fire up to a maximum of $3,094,200.00, such that, notwithstanding the Valuation Clause, No. 882, agreeing upon the actual values of these two buildings as $750,000.00, an amount sufficient to replace these burned structures would be collectible so long as total payments remain less than $3,094,200.00.

It is the contention of the defendant that under no circumstance can an amount be collected for any one building greater than the amount indicated as the agreed actual value in Valuation Clause, No. 882.

The trial judge sustained the demurrer and construed the policies in keeping with the defendant insurance company's contention. The policies as relate to this controversy consist of the following:

(1) The insurance agreement (Standard S. C. Form)

(2) Valuation Clause, No. 882

(3) The Public and Institutional Property Form, P. I. Form No. 1

(4) Public and Institutional Property Replacement Cost Endorsement, P. I. Form No. 4

(3) Endorsement-General, No. 282.

Statement of Values, P. I. Form No. 6, is not a part of any policy but was apparently filed at the inception of the policies and annually thereafter by the plaintiff with the Inspection and Rating Bureau. One such filing of this form was exhibited to the lower court and was printed over the objection of the plaintiff in settling the record for appeal.

Schedule Conversion Endorsement (blank), P. I. Form No. 2, included as a part of Exhibit B, is not a part of any policy and it is the contention of the plaintiff that this is the endorsement which should have been used by the defendant in order to limit the defendant's liability in keeping with its contentions in this suit.

The case is now on appeal and appellant states three questions raised by the basic issue involved, and one question as

relates to the granting of the motion to make more definite and certain, and one question as relates to the settlement of the record.

The issues as set forth by the questions stated in appellant's brief are as follows:

"1. Did not the blanket replacement cost insurance afforded under each policy (P. I. Forms Nos. 1 and 4) provide for recovery to the full extent of the face amount of each policy as to all of the property of every description damaged or destroyed by fire (apart from any effect of its Valuation Clause, No. 882, considered in Question 2)?

"2. Is the Valuation Clause, No. 882, in any policy to be construed on Demurrer as converting the blanket replacement cost coverage to a schedule listing of specific buildings, with a limited amount of replacement cost insurance on each building?

"3. Was there any proper evidence before the court to support His Honor's finding that the amounts set out in the Valuation Clause, No. 882, were based on the College's filing (Statement of Values) with the Inspection and Rating Bureau?

"4. Did His Honor err in requiring the College to amend its Complaint to describe the insured property in a manner different from the way it was described in the policies so that the Insurance Company could assert by Demurrer its construction of the policies?

"5. Did His Honor err in requiring the Appellant to print as an exhibit in the Transcript, a paper or document which was neither a part of the Complaint nor before the Court on stipulation?"

The five instruments forming the insuring contracts and relevant to the issues have been enumerated above. In order to understand the issues, it is necessary to set forth portions of at least some of the instruments.

The insurance agreement is the standard fire insurance policy for South Carolina and none of its terms is determinative of the issues involved.

The second instrument reads in part as follows:

"P. I. Form No. 1
Edition April 1960

"PUBLIC AND INSTITUTIONAL PROPERTY FORM

"(FOR USE ONLY WITH RATING PLAN FOR COVERING PUBLIC PROPERTY OR EDUCATIONAL INSTITUTIONS, CHURCHES AND HOSPITALS)

"SECTION I

"(A) $537,254.00 on all property of every description (except as otherwise limited or excluded) owned by the Insured, including architects fees, and on personal property of others for which the Insured assumed liability prior to loss, on the Insured's liability imposed by law for loss to personal property of others and on the Insured's interest in personal property belonging in whole or in part to others, all while situated at locations shown on the latest Statement of Values filed by the Insured with the South Carolina Inspection & Rating Bureau. [The $537,254.00 figure is taken from one policy. The eight policies totaled $3,094,200.00.]

* * *

"SECTION II

"(A) In the determination of any loss under this policy caused by the peril(s) insured against, occurring after the inception date of this policy and prior to March 24, 1964, this (Expiration Date of this Clause) Company shall not be liable for a greater proportion of any loss than the amount of insurance under this policy bears to $3,094,200.00." [The date and figure shown are not included in the original policy but are made effective by an endorsement dated July 3, 1963.]

The third instrument, No. 882, Valuation Clause, required by Section 37-154 of the South Carolina Code in all fire insurance policies whatsoever, reads in part as follows:

"Does NOT apply to any of the Perils named in the Extended Coverage.

"Insurance under this policy is effected subject to the following agreements and provisions:

"Valuation Clause—The Insured and the Insurer hereby agree that the Value of buildings described herein is—and hereby fix the amount of insurance to be carried thereon (including this policy)—respectively, as follows:

"Agreed Value of Buildings"

"Building No. 1 $550,000.00

* * *

"Building No. 3 $200,000.00

* * *

"The agreed values as stated above are established for Insurance purposes only."

The fourth instrument is:

"P. I. Form No. 4
Edition March 1960

"PUBLIC AND INSTITUTIONAL PROPERTY REPLACEMENT COST ENDORSEMENT

"(FOR USE ONLY WITH RATING PLAN FOR COVERING PUBLIC PROPERTY, OR EDUCATIONAL INSTITUTIONS, CHURCHES AND HOSPITALS)

"(1) In consideration of One Dollar ($1.00), the provisions of this policy are amended to substitute the term 'replacement cost' for the term 'actual cash value' wherever it appears in this policy and in Section II(B) of the form attached thereto, thereby eliminating any deduction for depreciation, subject, however, in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached.

"(2) It is a condition of this policy that when this endorsement is attached, the amount set forth in Section II(A) of the form attached to this policy shall be based upon 'replacement cost' and not 'actual cash value.'

"(3) * * *

"(4) The Insured may elect to make claim under this policy in accordance with its provisions, disregarding this

endorsement and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided this Company is notified in writing within a reasonable time after loss of the Insured's intent to make such further claim.

"(5) THIS COMPANY'S LIABILITY FOR LOSS UNDER THIS POLICY INCLUDING THIS ENDORSEMENT SHALL NOT EXCEED THE SMALLEST OF THE FOLLOWING AMOUNTS (a), (b) or (c):

"(a) The amount of this policy applicable to the damaged or destroyed property;

"(b) The replacement cost of the property to which this endorsement applies, or any part thereof, identical with such property on the same premises and intended for the same occupancy and use;

"(c) The amount actually and necessarily expended in repairing or replacing such property or any part thereof.

"* * *"

As to the fifth instrument:

ENDORSEMENT-GENERAL-NO. 282 has been used on the several policies to change the amount of coverage supplied by particular policies, as indicated in SECTION I (A) of P. I. Form No. 1, and to change the expiration date and the total coverage applicable through all policies, as indicated in SECTION II (A) of the same form. On all the General Endorsement Forms there is space to indicate the type of insurance: "Specific," "Blanket," or "Reporting." All Endorsements indicate "Blanket" insurance.

P. I. Form No. 6 is entitled "STATEMENT OF VALUES." Its filing is required before the policy is issued and annually thereafter by the insured with the Inspection and Rating Bureau to serve as the basis for the determination of the premium rate to be charged the insured under the Public and Institutional Property Plan. The same is not a part of any of the policies involved in this action, but a blank form is included as a part of the second amended complaint

in Exhibit B. One such form, dated October 19, 1962, and executed by the insured, was exhibited to the judge in the course of the hearing and was printed in the transcript by the judge over the objection of counsel for the plaintiff. On the Statement of Values, space is provided to show "Actual Cash Value" or "Replacement Cost." "Replacement Cost" was indicated.

Section 37-154 of the Code provides as follows:

"No company writing fire insurance policies * * * shall issue a policy for more than the value stated in the policy or the value of the property to be insured, the amount of insurance to be fixed by the insurer and the insured at or before the time of issuing the policy." [This makes No. 882 necessary in all fire insurance policies whatsoever.]

Section 37-155 provides in part as follows:

"* * * riders or endorsements may, in consideration of an adequate premium or premium deposit, be attached to policies insuring property, indemnifying the insured for the difference between the actual value stated in the policy and the amount actually expended to repair, rebuild or replace with new materials of like size, kind and quality such insured property as has been damaged or destroyed by fire or other perils insured against." [This allows replacement value policies notwithstanding Section 37-154.]

The first three questions set forth above as worded by counsel for the appellant raise actually only one question, as indicated by respondent's brief as follows:

"Has the Defendant paid to the Plaintiff because of the destruction by fire, on February 12, 1964, of Plaintiff's dormitory-auditorium and administration buildings all sums which it was obligated to pay by virtue of its contracts of insurance?"

The court below has held that the Valuation Clause, No. 882, determined the maximum amount of coverage and insurance collectible on the respective items set forth.

The plaintiff contends that the dollar amount set forth in Property and Institutional Form P. I. Form No. 1, SECTION I, to wit, a total of $3,094,200, for the eight policies is the amount of the policy and that it is "the amount of this policy applicable to the damaged or destroyed property," as contemplated by Replacement Cost Endorsement, P. I. Form No. 4, Paragraph (5) (a), and contends that Valuation Clause, No. 882, is actually irrelevant to the issues involved in this case.

In order to understand the problems involved herein, it is necessary to discuss some of the instruments which together make up the whole contract of insurance.

■ Section 37-155 allows an endorsement to be added to a fire insurance policy to indemnify an insured for the difference between the actual value stated in the policy (No. 882) and the amount actually expended to repair, rebuild, or replace the insured property. It is commonly referred to as replacement cost insurance, and previously called depreciation insurance. If one is paid actual cash value for the destruction of a building which is, by reason of depreciation, worth only one-half of its replacement cost, the insured is in no financial condition to replace the building. Replacement cost insurance was devised to provide money for reconstruction. In effect, the insurer, under this plan, agrees to pay not only actual value but also the difference between actual cash value and full replacement cost.

■ Section 37-155 contemplates and requires that actual value be inserted in the policy as a foundation for replacement costs coverage. The section permits an endorsement to indemnify "the insured for the difference between *the actual value stated in the policy* and the amount actually expended to repair, rebuild or replace * * *." (Emphasis added.)

Sections 37-674 and 37-691, relating to approvals of new plans of insurance, read as follows:

"Section 37-674. Rate findings required.—Every insurer shall file with the Commissioner, * * *, every manual,

minimum or class rate, rating schedule or rating plan and every other rating rule and every modification of any of the foregoing which it proposes to use. Every such filing shall state the proposed effective date thereof and shall indicate the character and extent of coverage contemplated."

"Section 37-691. No insurance issued except on rates filed.—No insurer shall make or issue a contract or policy except in accordance with the filings which are in effect for such insurer as provided in this chapter * * *."

Pursuant to these sections, the South Carolina Inspection and Rating Bureau submitted to the Insurance Commissioner a Public and Institutional Property Plan in 1960, which was approved. This filing has been made a part of the second amended complaint by the lower court and we think properly so, and, therefore, the filing is a part of this complaint and appropriate for our consideration of the demurrer. Pursuant to such filing and approval the instant policies were issued.

P. I. Form No. 1 as written provides for blanket insurance and compensates for actual cash value of property destroyed. (P. I. Form No. 4, discussed hereafter, may be used to convert P. I. Form No. 1 to replacement cost insurance.)

P. I. Form No. 1, denominated "Public and Institutional Property Form," is not, standing alone, an insurance policy. There must first exist a valid insuring agreement to which it can be attached. Under the terms of 37-154 there can be no valid fire insurance policy until and unless Valuation Clause, No. 882, has been made a part of the same.

P. I. Form No. 1 brings into being what is commonly referred to as blanket coverage, or sometimes called blanket insurance. Its definition is stated in the Rules and Regulations of the Insurance Commission, page 327, Volume 17, of the South Carolina Code, as follows:

"Blanket coverage—Insurance which contemplates that the risk is shifting, fluctuating or varying, and which

covers a class of property or persons rather than any particular thing or persons."

The definition is almost identical with the definition given in *National Bank of Burlington v. Fidelity & Casualty Co. of New York,* 4 Cir., 125 F. (2d) 920, 140 A. L. R. 694.

It is similar to the definition included in *Schmaelzle v. London & L. Fire Insurance Co.,* 75 Conn. 397, 53 A. 863, 60 L. R. A. 536.

"The characteristic features of a blanket policy are well understood. Its very essence is that it covers to the full amount every item of property described in it. If the loss upon one portion or item of the property exhausts the full amount of the policy, the whole insurance must be paid. There can be no apportionment of it. In the absence of a prorating clause, one blanket insurer among many insurers, whether blanket or specific, may be sued, and he must pay the whole loss, if it is not in excess of his policy."

The Valuation Clause, No. 882, is an agreement by the insured and the insurer at the inception of the policy of the actual cash value of property insured and is a fixed amount continuing throughout the policy unless amended by endorsement. It is completely inconsistent with replacement cost insurance because the very nature of replacement cost insurance involves a fluctuating figure and can never be determined until after the loss has actually occurred and replacement cost figures procured.

It is of significance that Valuation Clause, No. 882, is not a Public and Institutional Property Plan form and is not among those forms submitted by the South Carolina Inspection and Rating Bureau to the Insurance Commissioner for approval.

There is no doubt that the insurer considered this blanket insurance or blanket coverage, as is indicated by the fact that "Blanket" in designating the type of insurance on its General Endorsement Form, No. 282, was checked by the insurer each time an

endorsement was added. A space on this form is provided for either "Specific" insurance or "Reporting" insurance, but neither of the last two was checked. The insurer, having elected to denominate its policy "Blanket" insurance, should be bound by the ordinary definition unless the same is inconsistent with the terms of the whole insuring agreement. It is not sufficient to say, as contended by counsel for the insurer, that under the law of South Carolina there is no requirement that blanket insurance have any certain features. This court attaches significance to the company's own designation of its policy along with all of the other contents of the policy and endorsements.

The designation of type of insurance cannot make the contract, but the designation does indicate intent of the parties.

Counsel for the insurance company argues that the the term "blanket insurance", as used in the endorsements, applies to only the personal property and that a distinction is made between real estate valued by No. 882 and personal property, for which no agreed valuation is required, and submits that replacement cost is applicable to the personal property insured because there is no agreed valuation to which the replacement cost endorsement can attach. This is a strained construction and if the insurer would make a distinction, such should be spelled out in the contract or be brought about by the use of P. I. Form No. 2. The Public and Institutional Property P. I. Form No. 1 provides an over-all amount to cover "all property of every description * * * owned by the insured * * * at locations shown on the latest Statement of Values filed by the insured with the South Carolina Inspection & Rating Bureau." Under the universal rule adopted in our State, an ambiguity must be resolved in favor of the insured and construed most strongly against the insurer. *Harleysville Mutual Casualty Company v. Nationwide Mutual Insurance Company*, 248 S. C. 398, 150 S. E. (2d) 233.

Replacement Cost Endorsement, P. I. Form No. 4, is not necessary in every case where blanket coverage is provided by P. I. Form No. 1. Blanket coverage as contemplated by P. I. Form No. 1 may provide the insured with actual cost value reimbursement or this Form No. 1 may provide the insured with replacement cost insurance when and if P. I. Form No. 4 is added as an endorsement. A study of P. I. Form No. 4 shows that its basic purpose is to substitute "replacement cost" for the term "actual cash value" wherever it appears in the policy. It is obviously held out to the insurance buyer as an increased benefit to bridge the gap between the value of a used building and the cost of replacing the same.

It is the contention of the insurance company that it may elect under paragraph (5), subsection (a), to discharge its obligation by paying only the actual agreed values set forth in Valuation Clause, No. 882, as relate to buildings 1 and 3. We think, however, after P. I. Form No. 4 is attached, that "the amount of this policy applicable to the damaged or destroyed property," as used in paragraph (5), subsection (a), relates to the figure used in P. I. Form No. 1, SECTION I, or, in this case, the total of the eight figures in the eight policies, or $3,094,200.

P. I. Form No. 6, entitled "Statement of Values," is a part of the filing with the Insurance Commissioner and provides blanks to be filled in by the insured and sworn to showing the estimated values of the respective properties insured. This form is required before the policy is issued and annually thereafter.

It provides space for both personal property and real estate and has space for insured to indicate "Actual Cash Value" or "Replacement Cost."

Among such forms was one dated October 19, 1962, and filed by the insured with the South Carolina Inspection and Rating Bureau. It is used solely for the purpose of assisting the Rating Bureau in determining an appropriate premium to be charged. Such Statement of

Values need not necessarily be adopted as a true basis for the premium and is subject to verification by the Bureau. See Rule 58-A, paragraph 5c, filed with the Insurance Commission by the Rating Bureau.

A blank form is part of the filing (Exhibit B) and a part of the complaint, but the completed form which was filed with the Rating Bureau is not a part of the complaint, and is not relied upon by the plaintiff at this time. The same is not, therefore, appropriate for consideration of a demurrer and should have been disregarded by the lower court and will be disregarded by this court in making the determination as relates to the demurrer.

Among the forms submitted to the Rating Bureau and approved by the Insurance Commissioner is one entitled "Schedule Conversion Endorsement," P. I. Form No. 2. It is the contention of the insured that this is the form which should have been used if the insurance company would limit its liability along the line of its contentions in this case. This form is not a part of the policy, but a blank was submitted to the Insurance Commissioner and approved, and it is the form designed to bring about scheduled listings of specific or multiple items. In Rule No. 58-A, filed with the Insurance Commissioner, we find the following from Exhibit B:

"b. Schedule Conversion Endorsement P. I. Form No. 2—

"(1) Only this endorsement may be used to convert P. I. Form No. 1 to provide schedule listing of specific or multiple items."

The fact that this approved form was not used is helpful in determining intent of the parties.

In interpreting the insuring agreement, which includes consideration of all the instruments, we have considered the intent and reasonable expectation of the parties. We think that the insured was justified in

believing that blanket coverage was provided for both the real estate and the personal property referred to in P. I. Form No. 1.

We conclude that Valuation Clause, No. 882, does not determine the extent of liability of the insurer under the policies and the lower court erred when it held that it did. The demurrer should have been overruled.

By exception, appellant challenges the correctness of the lower court's ruling in requiring the plaintiff to amend its complaint by indicating by numbers the burned buildings as they appear in Valuation Clause, No. 882. For the purpose of the demurrer we have held, in effect, that this form is not controlling on the issue of liability. However, we cannot anticipate what issues may be raised when the case is tried on its merits and at that time the trial judge can rule upon the relevancy of the matters allowed by the amendments in the light of the issues as they come to be developed.

The allowance of amendments is largely a matter of discretion of the trial judge and we cannot say that he abused his discretion. Accordingly, this exception is overruled.

By further exception, counsel for the plaintiff submits that the lower court erred in requiring the appellant to print as an exhibit in the transcript a copy of Statement of Values, P. I. Form No. 6, filed by the insured with the Rating Bureau. We have referred to this matter above and since the form was not a part of the complaint, same was not appropriate for consideration of the lower court or this court on demurrer. It was appropriate for the judge to consider the same as relates to the motion to make more definite and certain. We would, therefore, hold that it was not error to print the form solely as it might relate to consideration of the motion.

The order as relates to the demurrer is reversed. Let the defendant have 20 days from filing of the remittitur to ans-

wer. On other issues the lower court is affirmed as indicated above.

Reversed in part; affirmed in part.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.