**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,**

v.

**BOARD OF EDUCATION OF FAIRFIELD, Defendant.**
**Civ. A. No. 71–593.**

United States District Court,
N. D. Alabama, S. D.
March 17, 1972.

Ollie L. Blan, Jr., of Spain, Gillon, Riley, Tate & Ansley, Birmingham, Ala., for plaintiff.

Maurice F. Bishop, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

POINTER, District Judge.

In this diversity action USF&G seeks a declaration of its rights and obligations under a blanket fire insurance policy issued by it to the Fairfield Board of Education. The Board has counterclaimed for the amount claimed as due under the policy on account of fire damage sustained on March 11, 1971, to the main building of the E. J. Oliver High School. At the conclusion of the trial several issues were submitted to the jury for its determination by special verdict; and all remaining factual is-

sues were, without objection, reserved for decision by the court under Rule 49.

USF&G issued a three-year policy, effective January 1, 1970, insuring the Board against loss (subject to the terms thereof) by fire to all property owned by the Board. Among the twenty-one facilities listed in the Statement of Values in the policy at time of issuance was the E. J. Oliver High School, shown therein as having an actual cash value of $725,000 for the building and $50,000 for the contents. The second year's premium was paid on January 15, 1971. On March 11, 1971, without any endorsement or other formal action deleting it from coverage and while it was still owned by the Board, the E. J. Oliver High School main building was almost totally destroyed by fire. The parties have stipulated that that amount of actual loss to both the building and its contents was $525,000.

The dispute between the parties may be subsumed under two topics: (1) the viability and applicability of the policy provision that USF&G should not be liable for loss occurring "while a described building . . . is vacant or unoccupied beyond a period of sixty consecutive days;" and (2) the effect of Section II(A) of the Public and Institutional Property Form endorsement on what is admittedly a "blanket" policy.

The jury by special verdict found that the facility in question was "vacant or unoccupied" on the day of the fire, those terms being defined according to their meaning in the policy. There is substantial evidence to support the jury's finding on this issue. Nor is there any doubt but that the same state of usage, or rather non-usage, had continued for more than sixty days next preceding the fire. Accordingly, it must be held that the building had been "vacant or unoccupied" for more than 60 consecutive days preceding the fire.

In addition to denying that the facility had been vacant or unoccupied, the Board had asserted (1) that this provision, or the right to assert it as a defense, had been waived by USF&G or its agents; (2) that USF&G was estopped to assert this provision; and (3) that the 60 days should not be held to commence running until February 1, 1971, the effective date of endorsement number three to the policy. In this connection the Board has emphasized the undisputed facts that the change in usage of the E. J. Oliver main building had occurred during the calendar year 1970; that such change was known to USF&G's agent (and perhaps its own home office personnel) prior to January 1, 1971; and that, notwithstanding such knowledge, USF&G's agent executed a "second endorsement" effective January 1, 1971 (extending for an additional year the provisions of Section II(A) of the Public and Institutional Property Form), collected a full second year's premium on January 15, 1971, and executed a "third endorsement" effective February 1, 1971 (cutting in half the total amount of insurance under the policy). Support for the Board's position is found in Providence Washington Insurance Co. v. Stanley, 403 F.2d 844 (5th Cir. 1968).

Footnote 6 in the *Providence* case, 403 F.2d at 850, states a critical distinction:

Care must be exercised not to confuse the principles of waiver and estoppel even though their result is often the same. They are clearly distinguishable. Waiver is the intentional relinquishment of a known right; estoppel is the abatement by operation of law of the insurer's original right because of the insured's prejudicial reliance on the insurer's action or inaction. Estoppel, therefore, does not depend on a voluntary relinquishment by the insurer. See 16A J. Appleman, supra, § 9081, pp. 279–282.

In the present case the jury by special verdict has found that, although USF&G's agent knew that the building in question was listed in the Statement of Values but was no longer being used for classroom or general school purposes, nevertheless he did not intend at the

time of executing endorsements number 2 or 3 to waive as regards that building the occupancy clause of the policy. Such finding is supported by credible evidence. The question of waiver is ultimately a matter of knowledge and intent; the jury having ruled against the Board on the element of intent, the conclusion must be that USF&G did not waive the occupancy clause or its right to utilize that clause to limit its liability.[1] *Providence* does not require a contrary conclusion.

■ A close reading of *Providence* makes it clear that the Court there held the occupancy clause unavailable to the insurance company on the basis of estoppel. In the present case the Board withdrew during the course of trial its contention regarding estoppel; it cannot now, after return of the jury verdict foreclosing its waiver defense, breathe new life into such position, particularly since its withdrawal of that position had the effect of precluding the introduction of evidence offered on that issue by USF&G.

■ The court concludes, however, following the reasoning urged by the Board, that the 60 days should be measured from February 1, 1971, the effective date of endorsement number three, and that, accordingly, coverage was afforded regarding the E. J. Oliver main building at the time of the fire, March 11, 1971. In reaching this conclusion, we first adopt the rationale of Old Colony Insurance Co. v. Garvey, 253 F.2d 299 (4th Cir. 1958); namely, that, resolving any ambiguities against the insurer, the period of vacancy prior to issuance of a policy should, absent a specific provision to that effect, be disregarded. Secondly, we conclude that a material, significant alteration in an insurance policy affecting both the potential liability of the insurer and the consider-

ation to be paid therefor by the insured should be treated as having the same effect as an original issuance of the policy upon an occupancy clause; that is, absent a contrary provision of the policy free from ambiguity.

The February 1, 1971, endorsement made a material, significant change in the rights and liabilities of the parties thereunder. It reduced the total exposure of the insurer from $2,172,870 to $1,086,435. It moreover, as will be covered *infra*, reduced the insurer's exposure on any particular loss from 50% of the insured's loss to 25% of the insured's loss. The premium charge was likewise to be reduced. This was not a mere extension or renewal of rights. It required, and was effectuated by, an execution of the endorsement by both the insurer and the insured.

We are not here holding that the endorsement of February 1, 1971, had the effect of eliminating from the agreement which then was to apply between the parties those provisions regarding occupancy. Those provisions, as with other provisions of the policy not specifically modified by the endorsement, were to be given effect as stating the agreement of the parties from and after February 1, 1971. This, however, also included the listing of the E. J. Oliver High School main building as a described property. Although the building was so included in the statement of values which was part of the agreement between the parties from and after February 1, 1971, the jury in its special verdict found that (1) the agent did not intend to waive the occupancy provision as to that building, and (2) the agent did not intend that the building should "remain" listed. In this connection there was testimony that from and after February 1, 1971, efforts were made by the agent leading towards ultimately "de-

1. Like the jury, the court finds that the agent did not intend at the time of accepting the second year's premium on the intervening date of January 15, 1971, to waive the occupancy clause. Nor does the court find that at any other date either the insurer or its agents intended to waive such clause or the right to use such clause as a defense to any action.

listing" the E. J. Oliver building. The conclusion reached by the court—that the occupancy clause should be held viable, but subject to measurement from the endorsement date of February 1, 1971—does not appear inconsistent with the findings of the jury and the other evidence adverted to.[2]

■ Finally, there is the question as to the amount of liability of USF&G under this "blanket" policy. The Board asserts that it should recover its entire loss of $525,000; the insurer says that it would be liable for only 25% of this amount, $131,250. The Board cites Columbia College v. Pennsylvania Insurance Co., 250 S.C. 237, 157 S.E.2d 416; and Reliance Insurance Company v. Orleans Parish School Board, 322 F.2d 803 (5th Cir. 1963).

Language in the *Columbia College* and *Reliance* opinions—which indicates that there is no apportionment in a blanket policy but that the total amount of insurance is available for the loss to only one property—does appear to support the Board's position here. However, a close reading of the cases makes it clear that the courts there were addressing themselves to the problem of the effect of the amount shown in a statement of values which formed part of a blanket policy. In each case the insurer was contending that its maximum exposure under the blanket policy on the loss to a particular property was determined by reference to the value shown for that property in the statement of values— that, in effect, the total insurance should be considered as divided among the several properties shown in such statement. In each case the court concluded that a blanket policy should not be so construed.

These two cases would be applicable if the Board here were asserting that its loss exceeded the stated values shown in the statment of values for the building and its contents of $725,000 and $50,000 respectively. Were the insurer in such a situation to claim that its liability was limited by virtue of such stated values, then *Columbia College* and *Reliance* would require a conclusion adverse to the insurer. There is, however, no such dispute here: the parties have stipulated that the Board's loss is $525,000, well below the stated values.

Section II(A) of the Public and Institutional Property Form endorsement, as amended on January 1, 1971, provides as follows: "This Company shall not be liable for a greater proportion of any loss, occurring after the inception date of this policy and prior to 1–1–72 than the amount of insurance under this policy bears to $4,345,740.00." The amount of insurance was (as amended by the February 1, 1971, endorsement) $1,086,435.00. (Prior to February, the amount of insurance was $2,172,870.00) This clause is free of ambiguity; it means that the company was to be liable for only 25% of any loss, just as prior to February 1, 1971, it was to be liable for only 50% of any loss. *Reliance* does not prevent there being a blanket policy which insures only a percentage of any loss—indeed a reading of the district court opinion (201 F.Supp. 78) in conjunction with the opinion of the Court of Appeals reflects that the insurer was merely paying 50% of the actual loss sustained (albeit 50% of an amount in excess of the stated value of the damaged building).

The Board is due to receive under the policy 25% of the stipulated amount of

2. An insurer should be able to avoid the construction herein placed on the policy provision by using explicit language to the contrary. *E. g.*, the company shall not be liable under this policy (or any modification, renewal or extension thereof) for loss occurring to a building or its contents if on the date of the loss the building has been vacant or unoccupied for a period of sixty or more consecutive days, whether all or any of such days occur during the period of this policy (or any modification, renewal or extension thereof), or during the period of any prior policy with the company, or at a time prior to any policy with the company. Of course, there still could be in an appropriate case a waiver of such a provision or evidence establishing an estoppel to raise such provision.

loss—$131,250. Judgment will be entered for the Board on its counterclaim in such amount, with interest at the legal rate from August 18, 1971 (sixty days after proof of loss was submitted) to the date of judgment. USF&G's rights and obligations are as specified in this opinion. Costs will be taxed against USF&G.