GEORGE J. KOLIVERA and the PIONEER TRUST AND SAVINGS BANK OF CHICAGO, as Trustee, Plaintiffs-Appellants, v. HARTFORD FIRE INSURANCE COMPANY et al., Defendants-Appellees.

(No. 55121;

First District—October 31, 1972.

Anagnost & Anagnost, of Chicago, (Catherine Cook Anagnost, Gerald M. Chapman, and Edmond Mosley, of counsel,) for appellants.

Clausen, Hirsh, Miller & Gorman, of Chicago, (Frank L. Schneider and James T. Ferrini, of counsel,) for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This action was brought to recover on insurance policies for loss resulting from a fire occurring on October 22, 1963, and another on October 29, 1963. At the close of all the evidence the trial court directed a verdict for the defendants on the ground that plaintiffs had not established that the premises were occupied during a 60-day period prior to the fires, as required by the provisions of the policies. The facts follow.

George Kolivera owned a two-story light manufacturing building at 4248-50 West Roosevelt Road, in Chicago, with 6250 square feet of open space on each floor. Prior to March 20, 1963, the entire building was rented, with the exception of two small areas on the first floor which plaintiff Kolivera reserved for his own office, and an adjacent space which, according to his testimony, was used for a paint sundries enterprise. After March 20, 1963, the tenants had all vacated and the building was unoccupied except for the space used by Kolivera and a small area which a restaurant owner rented for storage of equipment. The building was

practically destroyed by two fires—one on October 22 and one on October 29, 1963.

Kolivera carried nine fire insurance policies on the building. Hartford Fire Insurance Company, Citizens Insurance Company, and Centennial Insurance Company issued new policies within 60 days of the October 22 fire. Home Insurance Company and American Surety Company renewed existing policies within that period. The remaining defendants carried coverage which had been issued prior to the 60 days preceding the first fire. The coverage was for light mercantile purposes, and each policy contained the following provision suspending insurance coverage:

"(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days, * * *."

Kolivera's main occupation was the management of buildings. He also handled the purchasing, assemblage and sale of three types of paint roller components under the name of Coast to Coast Metal Products. The mailing address of the company was 5611 West Chicago Avenue, where Kolivera maintained an office, and where all of the records and equipment pertaining to the paint company were kept. Kolivera testified that the Roosevelt Road building was used for assembling and packaging the roller components, and that he spent two to four days a week there, on which occasions he employed a helper.

Harriet Lakis, whom Kolivera later married, testified that she worked as a part-time secretary at the Chicago Avenue office, but that Kolivera took a typewriter from there once or twice a week to the Roosevelt Road building where she typed shipping labels for the paint roller components. Robert King, a real estate broker, testified that he had visited the building and found Kolivera and his helper working there.

It was admitted that the building had no telephone service and that it was being offered for immediate sale. Kolivera testified that the building had water and electricity, but the defendants introduced copies of electric bills which indicated that no electricity was used in the building from March 20, 1963, to the date of the first fire. Kolivera also testified at a pre-trial deposition that the building was without heat, but at the trial he testified under questioning that there was heat in the building.

Two insurance adjusters who had inspected the premises soon after the fires testified that a thick layer of dust, not attributable to the fires, was found on the floors; that the toilet facilities appeared to have been unused for a long time; and that no evidence of the alleged paint sundries operation was found on the premises. Kolivera introduced his roller com-

ponent sales receipts into evidence, and these, in addition to his testimony, show that the enterprise had a gross income of less than $200 from March 20, 1963, to the date of the first fire. In the period within 60 days of the first fire, gross receipts amounted to only $30.02.

A summary judgment was entered for plaintiffs as to the three defendants who had issued new policies within 60 days of the first fire. Plaintiffs' motion for summary judgment did not include the two defendants who had merely renewed policies within this period. On appeal the plaintiffs argue:

"(1) The trial court erred in directing a verdict for the defendants on the question of lack of occupancy of the building within 60 days of the fire as required by the policies, in light of the evidence adduced at trial.

(2) Assuming the premises were vacant or unoccupied at the time of the fire, the policies either issued or renewed within 60 days of the fire require that the 60-day period be measured from the date of issuance or renewal."

■■■ The issue before us is whether the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494.) In an insurance contract, what is meant by the term "occupancy" is a question of law, but whether a building was occupied within the meaning of that term is a question of fact. (*Schuermann v. Dwelling House Insurance Co.* (1896), 161 Ill. 437; *Home Insurance Co. v. Mendenhall* (1897), 164 Ill. 458.) Occupancy must be defined in relation to the purposes for which the property is designed and insured, and what constitutes such for one type of structure will not necessarily be the same for one of a different type. (*American Insurance Co. v. Foster* (1879), 92 Ill. 334; *Western Assurance Co. v. Mason* (1879), 5 Ill.App. 141.) Occupancy of manufacturing property requires a practical use of the premises in reference to the nature of the building and the ordinary incidents of its use. *Halpin v. Phenix Insurance Co.* (1890), 118 N.Y. 165.

■■ In the instant case, the building was a mercantile structure containing 12,500 square feet of usable space. It is undisputed that the second floor and a large portion of the first floor remained unused after the last tenant left, and that the building was being offered for immediate sale. The only part of the building used after that time was the space rented to the restaurant owner for his equipment and for Kolivera's alleged paint sundries operation. Mere storage use of a manufacturing building does not constitute occupancy within the meaning of a vacancy clause. (*Halpin v. Phenix Insurance Co., supra.*) It follows that the issue

of occupancy must turn on the plaintiffs' alleged paint sundries operation.

Plaintiffs cite *Pritchett v. Herman Farmers Mutual Insurance Co.* (1930), 201 Wis. 521, as standing for the proposition that less than full scale use of a manufacturing facility does not violate the terms of an insurance contract's vacancy clause. *Pritchett,* however, is distinguishable in that, unlike the instant case, the issue there was whether a substitution of parties—not a substitution of uses—constituted a violation of a vacancy clause. No such issue is presented in the case before us.

■■ The evidence shows that the plaintiffs considered the paint sundries operation a side venture, the receipts from which were minimal, at best. Kolivera was highly equivocal in his testimony concerning the frequency of his use of the building for this alleged operation. He offered no explanation of the seemingly useless act of transporting office equipment to the building and having his secretary go there for the purpose of typing a small number of shipping labels. The building was without telephone and electric service, and while Kolivera testified that the premises were heated, his testimony on this point was impeached by his prior deposition. It is undisputed that no evidence of the alleged paint sundries operation was found after the fires. The dust found on the floors after the fires, and the condition of the toilet facilities indicate that the premises had not been used for some time. In view of such evidence we hold that it was not error for the trial court to enter a directed verdict for the defendants on the question of the building's occupancy during the 60-day period prior to the fires.

The second issue raised by plaintiffs on appeal is that, regardless of the actual vacant or unoccupied status of the building, the 60-day vacancy clause contained in those policies issued or renewed within 60 days of the fires must be measured from the date of issuance or renewal. We have not been referred to any Illinois case which has passed on this question. The leading case appears to be *Old Colony Insurance Co. v. Garvey,* 253 F.2d 299 (4th Cir. 1958), where it was held that, absent specific language including such, a previous condition of vacancy or unoccupancy of premises is to be disregarded upon the issuance of a policy of insurance containing a vacancy clause, and that such clause is to be measured from the time of issuance of the policy. Other cases have followed this view: *United States F. & G. Co. v. Board of Ed. of Fairfield* (N.D. Ala. 1972), 339 F.Supp. 315; *Home Mutual Fire Insurance Co. v. Pierce* (Ark. 1966), 402 S.W.2d 672; *Bledsoe v. Farm Bureau Mutual Insurance Co.* (Mo.App. 1960), 341 S.W.2d 626; *Hurst v. Donegal & Conoy Mutual Fire Insurance Co.,* 224 S.C. 188, 78 S.E.2d 189. We have found no case holding otherwise.

■■ As defendants Hartford Fire Insurance Company, Citizens Insur-

ance Company, and Centennial Insurance Company, who issued new policies within the 60-day period, had a reasonable opportunity to inspect the property to determine whether it conformed to all requirements of a policy prior to the issuance of coverage, they should not be heard later to claim a violation of a vacancy provision which they took no steps to discover. We adopt the view of the authorities cited and hold that pre-existing vacancy or unoccupancy prior to the issuance of a policy of insurance will be disregarded unless specific language in the policy provides otherwise. The entry of a judgment for the abovementioned insurance companies was erroneous.

■■ It is not necessary that we consider whether the policies that were renewed within 60 days of the fires require that the 60-day period be measured from the date of renewal. This issue, as to those defendants who renewed existing policies within that period, was not raised in plaintiffs' motion for summary judgment at trial or in plaintiffs' post-trial motion. A theory not presented to the trial court by an appellant cannot later be raised on appeal by that party. *Blanchard v. Lewis*, 414 Ill. 515; *In re Estate of Leichtenberg*, 7 Ill.2d 545.

The judgment is affirmed as to all defendants except Hartford Fire Insurance Company, Citizens Insurance Company, and Centennial Insurance Company. As to these latter defendants, the judgment is reversed and remanded.

Affirmed in part and reversed in part.

STAMOS, P. J., and LEIGHTON, J., concur.