2026 IL App (1st) 251987-U

SECOND DIVISION
June 16, 2026

No. 1-25-1987

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ARGUS INVESTMENT, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24L201 |
| | ) | |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) | Honorable |
| | ) | James E. Hanlon, Jr., |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court properly granted summary judgment in favor of West Bend because (1) the insurance policy unambiguously excluded coverage for water damage occurring after the property had been vacant more than 60 consecutive days; (2) West Bend did not waive its right to enforce the vacancy exclusion; and (3) West Bend was not estopped from raising this exclusion.

¶ 2    This appeal arose after a flood damaged property owned by plaintiff Argus Investment, Inc. (Argus). Argus had operated a commercial brewery at the location and the property was insured by defendant West Bend Mutual Insurance Company (West Bend). The policy included a standard provision providing that if the building became vacant for more than 60 consecutive

days before a loss, coverage would not apply to certain causes of loss, including water damage. Prior to the flood, the brewery had ceased operation and the property remained unused.

¶ 3     Argus sought coverage for the flood damage from West Bend, but West Bend denied coverage under the vacancy exclusion. Argus filed a complaint against West Bend, alleging that the parties had entered into a contract for insurance and West Bend breached the contract when it refused to reimburse Argus for the damage to its property. West Bend filed a counterclaim seeking a declaratory judgment that it did not owe any duty to reimburse Argus for the damages. West Bend subsequently moved for summary judgment and asserted that it did not breach its insurance contract and that the vacancy of the property had not been communicated to West Bend. Argus responded that West Bend had waived its right to enforce the vacancy exclusion. The trial court granted West Bend's motion and concluded West Bend did not waive the exclusion.

¶ 4     On appeal, Argus contends that West Bend waived or was estopped from relying on the vacancy exclusion because West Bend knew, or had notice, that the property was vacant. West Bend responds that its insurance policy unambiguously excluded coverage for water damage occurring after the building had been vacant for more than 60 days and Argus failed to establish that West Bend had notice of the vacancy.

¶ 5     At the outset, we provide a brief discussion of the case law regarding insurance policies to assist in the understanding of the issues involved here. It is well established that the insured bears the burden of knowing the contents of its insurance policies. *Babiarz v. Stearns*, 2016 IL App (1st) 150988, ¶ 43; *Connelly v. Robert J. Riordan & Co.*, 246 Ill. App. 3d 898, 902 (1993). "Even if they do not read the policy, they are deemed to know the information the policy contains." *Babiarz*, 2016 IL App (1st) 150988, ¶ 43 (citing *Foster v. Crum & Forster Insurance*

*Cos.*, 36 Ill. App. 3d 595, 598 (1976)). Further, an insurer has no duty to review the adequacy of the insured's coverage, "and when the premiums become due, the insured has the option of accepting, rejecting, or requesting a modification of the terms of the policy." *Connelly*, 246 Ill. App. 3d at 902. "[U]nless provided otherwise, it is the general rule that when a policy renewal is made the terms of the original policy become part of the renewal contract of insurance." *Dungey v. Haines & Britton, Ltd.*, 155 Ill. 2d 329, 334 (1993).

¶ 6　　We begin by reviewing the policy, the vacancy exclusion at issue, and some of the evidence presented during discovery. The four witnesses deposed in this case were: Robert Jensen, Mary Bruski, Mitchell Gall, and Mike Healy. Argus is an Illinois corporation that owns the property located at 11314 South Front Avenue in Chicago. According to Jensen, Argus's chief executive, the property was acquired in 2009 and Argus operated a brewery at that location.

¶ 7　　Argus obtained insurance for all business-related policies through an independent insurance broker, Esser Hayes. "[A]n insurance broker is an individual who solicits insurance business from the public under no employment from an insurance company and purchases insurance from the company selected by the client." *Babiarz*, 2016 IL App (1st) 150988, ¶ 45. In contrast, a "captive agent" works for "one insurance company exclusively." *Am. Family Mut. Ins. Co. v. Krop*, 2018 IL 122556, ¶ 23. Mike Healy, an insurance broker with Esser Hayes, represented Argus as his client to obtain insurance. Healy was not a captive agent for West Bend, but instead he worked with more than 20 insurance carriers to procure insurance. Healy was hired by Jensen to obtain insurance for Argus. The record does not disclose when Argus first purchased a commercial general liability (CGL) policy from West Bend. However, Jensen stated that Argus had insured the property with West Bend for years and he believed West Bend had been the only insurer of the property.

¶ 8    Through Esser Hayes, Argus purchased a CGL insurance policy from West Bend covering the property for the period of June 10, 2021, to June 10, 2022. The policy, number A152026 05, was issued to "Argus Investments, Inc. DBA Argus Brewery." The policy had previously been effective from at least June 10, 2020, and renewed automatically in 2021.

¶ 9    Mitchell Gall, an underwriting manager for West Bend, stated that when the June 2021 renewal came up, the policy was automatically renewed without an underwriter involved. In an affidavit, Gall further stated that an audit was not performed for the property coverage policy. Gall was not involved in the issuance of the policy or the claims and only became involved in the file in 2024.

¶ 10    The CGL policy issued to Argus included exclusions for "Loss Conditions," which provided, in relevant part:

> **"6. Vacancy**
>
> **a. Description of Terms**
>
> **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:
>
> > \*\*\*
>
> > **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
> > > **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or
>
> > > **(ii)** Used by the building owner to conduct customary operations.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

\*\*\*

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

\*\*\*

**(d)** Water damage."

These provisions were part of the initial policy and were not added or modified upon renewal. Jensen did not read the West Bend policy when it was issued and he did not know of the vacancy provision until the claim was denied.

¶ 11    The brewery that Argus operated on the property closed on March 27, 2020, due to the COVID-19 pandemic and did not reopen. All employees except the office manager, Mary Bruski, were terminated. Bruski was not involved in procuring insurance and reading the insurance policies was not part of her duties. At his deposition, Healy testified that he did not recall if Argus had informed him that the brewery had shut down. If Healy had been informed, there would have been an internal meeting with the staff and it would have "potentially" been reported to West Bend.

¶ 12    During the 2020-21 policy term, West Bend hired a third-party vendor to conduct an insurance audit for the worker's compensation policy. Gall stated that a third-party vendor conducted an audit related to a separate worker's compensation policy. The audit disclosed that

Argus had closed its brewery business due to the pandemic and reported that there were no employees working there. West Bend set the worker's compensation policy to "non-renew." Argus's CGL policy did not change. Jensen was unaware of a representative from West Bend visiting the property prior to the policy renewal in June 2021.

¶ 13    On January 14, 2022, the property sustained water damage due to flooding. Argus submitted a claim to West Bend for $135,735.41 in building damage and $160,897.68 in damage to inventory and equipment. West Bend subsequently denied the claim on January 21, 2022, under the provision that the property had been vacant for more than 60 consecutive days prior to the occurrence of the water damage.

¶ 14    In January 2024, Argus filed the instant complaint and alleged a breach of the insurance contract and a violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2022)) for West Bend's vexatious and unreasonable denial of Argus's claim. Argus alleged that the policy was valid and enforceable, Argus having fully performed under the contract by paying the premiums, but West Bend breached the contract by denying the claim. Argus further alleged that at the time the renewal policy was issued, Argus disclosed to West Bend that the property was vacant and West Bend knew it was vacant.

¶ 15    In response, West Bend filed a counterclaim for declaratory judgment in April 2024, alleging that West Bend's policy did not provide coverage for a building which has been vacant for more than 60 consecutive days before the loss or damage occurs. West Bend contended that it did not owe a duty to reimburse Argus for its damages because the property had been vacant for more than 60 consecutive days before the water damage occurred.

¶ 16    In February 2025, West Bend filed a motion for summary judgment and argued it had no duty to indemnify or reimburse Argus for water damage occurring after the property had been

6

vacant. Argus responded that the written discovery and depositions show West Bend knew or was on notice that the property was vacant prior to the renewal of the policy and, consequently, waived the policy exclusion.

¶ 17    In August 2025, following briefing and arguments, the trial court issued its written order and granted West Bend's motion for summary judgment. The court ruled that the policy and its terms were unambiguous and the vacancy exclusion applied unless West Bend waived its right to assert a defense. The court then found that West Bend had not waived the exclusion and West Bend had no duty to inform Argus of this policy exclusion. The court rejected Argus's suggestion that West Bend waived the exclusion "by selling a policy with an exclusion that rendered the insurance coverage illusory." The court, citing *Connelly*, 246 Ill. App. 3d at 902, observed that "such a holding would completely contradict established law on an insurer's duty." See *Connelly*, 246 Ill. App. 3d at 902 (insured has an affirmative duty of bringing any discrepancies in the policy to the attention of the insurer while insurer does not have a duty to review the adequacy of an insured's coverage).

¶ 18    Finally, the trial court concluded that West Bend took no affirmative action which amounted to a waiver of the policy exclusion. Specifically, the court observed that after a 2020 audit for the worker's compensation insurance, only two events took place involving West Bend: (1) a routine worker's compensation audit in 2021; and (2) an automatic renewal of the CGL policy. The court noted that both events occurred before Argus made a claim under the CGL policy. The court further found that "most importantly, Argus' insurance broker did not mention any need for a change in coverage at the time of the auto renewal."

¶ 19    This appeal followed.

¶ 20    Argus contends that West Bend waived or was estopped from enforcing the vacancy exclusion because it knew, or should have known, the property was vacant prior to the auto-renewal of the policy. West Bend responds that it did not waive the policy exclusion and that Argus failed to present any facts establishing West Bend knew the property was vacant prior to the policy renewal.

¶ 21    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2024). A genuine issue of material fact exists when the evidence is sufficient to cause a reasonable jury to return a verdict for the party opposing the entry of summary judgment. *Schuster v. Occidental Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 16. While a plaintiff is not required to prove his case at the summary judgment stage, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). To determine whether a genuine issue as to any material fact exists, we review the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment in favor of the defendant is proper if the plaintiff fails to establish any element of the cause of action. *Id.*

¶ 22    We review the trial court's summary judgment ruling *de novo*. *Id.*  Under a *de novo* standard of review, we use the same analysis that a trial court would with no deference to the trial court's decision. *Ruda v. Jewel Food Stores, Inc.*, 2024 IL App (1st) 230582, ¶ 37. Because we review the trial court's judgment, rather than its reasoning, we may affirm on any basis

supported by the record. *Philadelphia Indemnity Insurance Co. v. Pace Suburban Bus Service*, 2016 IL App (1st) 151659, ¶ 21.

¶ 23    We note it is undisputed that the property was vacant at the time the policy was renewed in June 2021. Nor does Argus contend that the terms of the vacancy exclusion are ambiguous. It is well established that when the language of an insurance policy is clear and unambiguous, a reviewing court will give effect to its terms. *Zdeb v. Allstate Ins. Co.*, 404 Ill. App. 3d 113, 117 (2010) (citing *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 410 (1992)).

¶ 24    Argus asserts that the vacancy exclusion was unenforceable under the principles of waiver and estoppel because West Bend knew, or was on notice, that the property was vacant. The terms "waiver" and "estoppel" are two discrete legal doctrines. *Lumbermen's Mut. Cas. Co. v. Sykes*, 384 Ill. App. 3d 207, 218 (2008). "Waiver focuses exclusively on the conduct of the insurer, while estoppel focuses on the conduct of the insured in response to representations made by the insurer." *Id*.

¶ 25    We address Argus's contention that West Bend waived the policy's vacancy exclusion first. Argus claims in a single three-sentence paragraph that West Bend waived this defense. After citing the law regarding waiver of an insurance defense, Argus offers a single conclusory sentence that given the extensive record, "the facts of this case give rise to a waiver of its policy." Argus's passing waiver argument is insufficient and warrants forfeiture of this argument. See Rule 341(h)(7) (eff. May 25, 2018).

¶ 26    Rule 341(h)(7) requires that an argument "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." *Id.* "A reviewing court is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; it is not merely a repository into which an appellant may 'dump the

9

burden of argument and research,' nor is it the obligation of this court to act as an advocate." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). An issue not clearly defined and sufficiently presented fails to satisfy the requirements of Rule 341(h)(7) and, thus, is deemed forfeited. *In re Estate of Doyle*, 362 Ill. App. 3d 293, 301 (2005). Accordingly, Argus has forfeited our review regarding an alleged waiver by West Bend.

¶ 27 Forfeiture aside, Argus argued before the trial court that West Bend had waived its defense of the vacancy exclusion because West Bend issued the policy despite having knowledge of the property's vacancy. West Bend maintains that Argus cannot demonstrate West Bend waived the vacancy exclusion.

¶ 28 "Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 326 (2004). "A waiver may be express or implied, arising from acts, words, conduct, or knowledge of the insurer. It is unilateral, as no act of the insured is necessary to complete it." *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 499 (1985).

¶ 29 Argus contends that West Bend waived the vacancy exclusion because "[a]n insurer may waive a policy defense, however, 'by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense.' " *Chaudhry v. Provident Life & Accident Ins. Co.*, 2014 WL 3511529, at *19 (N.D. Ill., 2014) (quoting *Sykes*, 384 Ill. App. 3d at 223). In its summary judgment response, Argus focused on the worker's compensation audits and the related internal emails to infer that West Bend had knowledge that the building was vacant. Argus points to emails exchanged between a West Bend employee and an employee with Esser Hayes, the insurance broker. However, these emails

referred only to adjustments to the worker's compensation policy, not the CGL policy. These emails indicated that Argus had one clerical employee (Bruski) and needed to reduce the exposure for other classes in the worker's compensation policy. The emails also stated that Argus canceled its liquor policy, effective March 27, 2020, the last day of the brewery's operations. The annual sales for 2020 to 2021 were listed as $10,000. Contrary to Argus's assertions, these emails do not discuss a vacancy in the property, but rather the wind down of the brewery operations. Significantly, nothing in these emails or audits suggests that Argus was requesting a change in its policy due to the building becoming vacant.

¶ 30     Moreover, neither of the cases cited by Argus involved a vacancy exclusion. In *Chaudhry*, the plaintiff argued that the insurers waived their right to reevaluate his disability claim under the residual disability provisions when the insurer had removed its reservation of rights regarding plaintiff's benefits and when the insurer continued paying the total disability benefits after again reevaluating the plaintiff's disability claim. *Chaudhry*, 2014 WL 3511529, at *19. Additionally, *Chaudhry* is an unpublished federal district court case and we are not bound by the holdings of federal district courts. *County of Du Page v. Lake St. Spa, Inc.*, 395 Ill. App. 3d 110, 122 (2009). In *Sykes*, the insurer maintained that it had not waived its coverage defense when it proceeded under a reservation of rights while investigating the basis for the damage. *Sykes*, 384 Ill. App. 3d at 222-23. Moreover, as West Bend points out, the actions raising the issue of waiver in both cases occurred *after* the claims had been filed. See *Chaudhry*, 2014 WL 3511529, at *3-9; *Sykes*, 384 Ill. App. 3d at 209-12. Argus fails to point to any action by West Bend that could be construed as a waiver of the vacancy provision after the claim had been filed.

¶ 31     Further, we point out that the vacancy exclusion in the policy sets forth that a "building is vacant unless at least 31% of its total square footage is *** used by the building owner to

conduct customary operations." Under the plain language of this exclusion, it does not follow that the closure of a business amounts to the vacancy of the property. Argus fails to show how the change in the worker's compensation policy equates to a communication that the property was now vacant and the CGL policy should be modified as necessary. As the trial court observed in its order, "Argus was free to put a new business in the premises. That would have made the Policy essential. West Bend was under no duty to guess at Argus's intentions for the Property."

¶ 32    The record clearly demonstrates that West Bend has consistently asserted that the vacancy provision bars coverage for Argus's claim for the water damage. Argus has failed to show any action taken by West Bend that could be construed as a waiver of this exclusion. Therefore, West Bend did not waive its right to enforce the vacancy exclusion.

¶ 33    Argus next contends that West Bend is estopped from relying on the vacancy exclusion, which Argus failed to raise before the trial court and is raising for the first time on appeal. Arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. See *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59; *Brochu*, 105 Ill. 2d at 500 (it is axiomatic that questions not raised in the trial court are forfeited and may not be raised for the first time on appeal). The purpose of the forfeiture doctrine is "to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." *1010 Lake Shore Ass'n v. Deutsche Bank Nat. Tr. Co.*, 2015 IL 118372, ¶ 14.

¶ 34    Contrary to Argus's contention here, Argus did not raise estoppel in its written response to West Bend's summary judgment. It instead focused solely on waiver. During arguments, counsel for Argus generally referred to the term "collateral estoppel," but did not specifically

speak to that principle. Similar to its waiver argument, Argus has forfeited its estoppel argument as well.

¶ 35   Despite this forfeiture, we address the merits of Argus's estoppel argument.

"Estoppel, in the insurance context, requires the insured to establish the following: (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance." (Internal quotation marks omitted.) *Sykes*, 384 Ill. App. 3d at 224.

"Under Illinois law, a plaintiff seeking to establish estoppel 'cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others.' " *Id*. at 225 (quoting *Young v. Allstate Ins. Co.*, 351 Ill. App. 3d 151, 164 (2004)). The insured seeking estoppel has the burden of proving these four elements by clear, concise, and unequivocal evidence. *Farmers Ins. Exch. v. Cheekati*, 2022 IL App (4th) 210023, ¶ 28.

¶ 36   According to Argus, West Bend issued the CGL policy in June 2021 despite having knowledge that the property was vacant and misled Argus to believe its building was covered. West Bend responds that it was unaware that the property was vacant when the policy automatically renewed. West Bend further asserts that it did not mislead Argus to believe the property was covered because the vacancy exclusion had been in the policy prior to renewal and was not modified. West Bend also maintains that nothing in the record suggests that it misled Argus to believe that vacant properties were covered under the policy.

¶ 37   We agree for the reasons that follow. It is undisputed that the vacancy exclusion was in the CGL policy prior to the 2021 renewal and was never modified. As previously observed, Jensen admitted that he had not read the policy and was unaware of this exclusion until West

Bend denied the claim. The onus was on Argus and its employees to read the policy and familiarize themselves with the policy exclusions. See *Babiarz*, 2016 IL App (1st) 150988, ¶ 43. Argus fails to point to any action by West Bend that misled Argus regarding the vacancy exclusion. Rather, Argus imputes knowledge of the property vacancy to West Bend prior to the policy renewal as misleading Argus to believe coverage existed. However, by Jensen's admission, Argus was unaware of a vacancy exclusion in the policy. Thus, Argus could not have been misled into believing the renewed policy provided coverage even if vacant when Argus did not know about the exclusion.

¶ 38    We find Argus's reliance on *Kolivera v. Hartford Fire Ins. Co.*, 8 Ill. App. 3d 356 (1972), to be misplaced. In that case, new insurance policies were issued to a vacant building and included similar 60-day vacancy exclusions. *Id*. at 357. The insured property suffered a fire less than 60 days after the new policies had been issued. At issue on appeal was whether the "60-day vacancy clause contained in those policies issued or renewed within 60 days of the fires must be measured from the date of issuance or renewal." *Id*. at 359. The reviewing court concluded that a preexisting vacancy prior to the issuance of the policy was to be disregarded. *Id*. at 360-61. In other words, it was irrelevant how long the property had been vacant because the 60-day period began when the policies were issued. Therefore, the insurers could not "claim a violation of a vacancy provision which they took no steps to discover." *Id*. at 361.

¶ 39    In contrast, it is undisputed that the water damage occurred in January 2022, which was more than 60 consecutive days following the automatic renewal of the CGL policy in June 2021. For this reason, *Kolivera* is inapplicable to the facts presented here.

¶ 40    Argus has improperly relied on an unpublished order filed in 2012, *West Bend Mut. Ins. Co. v. New Packing Co.*, 2012 IL App (1st) 111507-U, which is a violation of Rule 23. See Ill. S.

14

Ct. R. 23 (eff. June 3, 2025). We will not consider this Rule 23 order in our review.

¶ 41     We conclude that Argus's estoppel argument lacks merit. The record before us fails to establish that West Bend misled Argus to believe that the CGL policy would provide coverage if the property remained vacant. Argus never sought to alter its coverage to reflect a change in status prior to renewal. It was not West Bend's duty to review the adequacy of Argus's coverage. See *Connelly*, 246 Ill. App. 3d at 902. Accordingly, West Bend is not estopped from relying on the vacancy exclusion to deny coverage.

¶ 42     Argus further contends that there remains a question of material fact to preclude summary judgment. Relying again on the third-party audits and emails between West Bend and Esser Hayes, Argus asserts that a fact question exists as to whether West Bend knew the property was vacant. However, the CGL policy renewed automatically without an audit. Significantly, Argus fails to establish how the audits for the worker's compensation policy by a third-party vendor construed knowledge to West Bend that the property was vacant for purposes of the CGL policy. Moreover, the dates of these audits are telling. The first took place in August 2020 at the height of the pandemic closures and the second occurred in September 2021, after the CGL policy had renewed. Again, as stated above, West Bend did not have a duty to review whether Argus's CGL policy was acceptable for its needs. See *Connelly*, 246 Ill. App. 3d at 902. Argus did not alert either its broker with Esser Hayes or West Bend that the existing CGL policy did not provide adequate coverage. As stated, the CGL policy language was unambiguous, including the provision that a vacancy of 60 consecutive days prior to the water damage excluded coverage. Argus has failed to show that a question of material fact exists.

¶ 43     Based on the foregoing reasons, we affirm the circuit court's grant of summary judgment in favor of West Bend.

1-25-1987

¶ 44    Affirmed.

16